Raymond CIANCI,

v.

NATIONWIDE INSURANCE COMPANY.

No. 94–274–M.P.

Supreme Court of Rhode Island.

June 1, 1995.

Lauren Jones, Robert S. Thurston, Jones Associates, Vincent Indeglia, Providence, for plaintiff.

John Boland, Boyer, Reynolds & DeMarco, Providence, for defendant.

OPINION

LEDERBERG, Justice.

This matter came before the Supreme Court on four questions of law certified to us by the United States District Court for the District of Rhode Island pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure. At issue is whether the defendant, Nationwide Insurance Company, a workers' compensation insurance carrier, is liable to the plaintiff, Raymond Cianci, an injured employee. The questions certified to this court are as follows:

"1. Does Raymond Cianci, as an employee, have a cause of action pursuant to R.I.G.L. § 9–1–33 against Nationwide Insurance Company, the workers' compensation carrier, for bad faith concerning the manner in which Mr. Cianci's workers' compensation claim was handled?

"2. Does Raymond Cianci, as a third-party to the Nationwide workers' compensation policy, have a cause of action for breach of contract, breach of covenant of good faith and fair dealings, or breach of fiduciary obligation?

"3. Do the exclusivity provisions of the Rhode Island Workers' Compensation Act apply to Nationwide as the workers' compensation carrier for Ray Cianci, Inc.?

"4. Would the intentional tort exception to the exclusivity provisions of the Rhode Island Workers' Compensation Act apply to Nationwide as the workers' compensation carrier for Ray Cianci, Inc.?"

We conclude that this employee cannot pursue any claim against the insurance carrier except as provided in the Rhode Island Workers' Compensation Act. Therefore, we answer questions 1 and 2 in the negative, question 3 in the affirmative, and question 4 in the negative.

### Facts and Procedural History

The following background information was derived from the parties' agreed statement of facts and issues certified to this court by order of the United States District Court for Rhode Island.

Raymond Cianci (plaintiff) was the owner and an employee of Ray Cianci, Inc. (employ-

er). Prior to the date of his injury, plaintiff had opted into the Rhode Island Workers' Compensation Act (the act) as a covered employee. Nationwide Insurance Company (defendant) had issued a workers' compensation policy for the employer for the policy period that included the date of plaintiff's accident. On September 19, 1983,[1] plaintiff sustained burns during the course of his employment. While hospitalized, plaintiff received numerous blood transfusions. The defendant did not contest its liability in respect to plaintiff's burns and initiated payment of workers' compensation benefits pursuant to a memorandum of agreement.

In 1989 plaintiff began to experience difficulty with his liver, for which problems he sought coverage from defendant, alleging that his liver injury was caused by the blood transfusions he received during his initial hospitalization. The plaintiff also claimed that the transfusions had caused him to contract hepatitis C. The defendant contested the causal relationship between the blood transfusions and plaintiff's liver damage.

In May 1990, plaintiff filed a petition with the Rhode Island Workers' Compensation Court to amend the description of his injuries to include the "flow-through" or "flow-from" injury to his liver and to order payment for an apparently lifesaving liver transplant. In July 1990, plaintiff underwent a liver transplant, and on November 21, 1991, the Workers' Compensation Court granted plaintiff's petition to amend the description of his injuries and ordered payment of his medical bills related to his liver injury. The defendant did not appeal the decision and paid the benefits pursuant to the Workers' Compensation Court's decision. At the time of certification, plaintiff was still receiving indemnity and medical benefits in accordance with the Rhode Island Workers' Compensation Act.

On June 2, 1993, plaintiff filed a complaint against defendant in the United States District Court for the District of Rhode Island. The plaintiff's complaint alleged breach of contract (count 1), breach of the covenant of good faith and fair dealing (count 2), breach of fiduciary duties (count 3), and intentional infliction of emotional distress (count 5; plaintiff listed no count 4). The defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The motion was referred to the United States Magistrate Judge, who issued a report and a recommendation in favor of dismissal. The plaintiff apparently objected, after which a United States District Court judge ordered the parties to prepare an agreed statement of facts and issues to be certified to this court.

We now address each of the questions presented to this court.

### Question 1

"Does Raymond Cianci, as an employee, have a cause of action pursuant to R.I.G.L. § 9–1–33 against Nationwide Insurance Company, the workers' compensation carrier, for bad faith concerning the manner in which Mr. Cianci's workers' compensation claim was handled?"

In other words, does plaintiff have a cause of action pursuant to G.L.1956 (1985 Reenactment) § 9–1–33, "Insurer's bad faith refusal to pay a claim made under any insurance policy," against defendant for bad faith because of the manner in which defendant dealt with the claim?

■ The plaintiff first argued that this court must conform its review to the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure and "assum[e] the allegations of the complaint are true and resolv[e] any doubts in [plaintiff's] favor." Therefore, plaintiff asserted, because he alleged in his complaint that he was an insured under defendant's policy, this court must accept this allegation as true when ruling on the certified questions before us. We disagree.

The procedure by which these questions came before this court, namely, Rule 6 of the Supreme Court Rules of Appellate Procedure, provides for the certification of ques-

---

**1.** In the parties' "Agreed Statement of Facts and Issues to be Certified to the Rhode Island Supreme Court," the date of the injury is erroneously listed as September 19, 1993, instead of September 19, 1983. This error is evident from the fact that plaintiff began receiving benefits in 1983.

tions of state law where such questions may be determinative of the cause then pending in the certifying court and where there is no controlling precedent in the prior decisions of this court. Joseph R. Weisberger, *Rhode Island Appellate Practice*, cmt. 6.1 at 30 (Butterworth 1993). *See Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 488 A.2d 676, 679 (R.I.1985). The standard of review for the Federal Rule 12(b)(6) motion is not relevant to the determination of questions of state law and hence does not circumscribe the manner in which this court responds to certified questions. To hold that federal procedural standards must be considered in our determination would seriously interfere with "the salutary effect [offered by Rule 6] of precluding the necessity for federal courts to speculate concerning the proper determination by this court of a question of law not previously decided." Weisberger, cmt. 6.1 at 30. Therefore, we shall address the questions without applying the federal standard of review pertinent to the procedural posture of the case, leaving the certifying court to apply its standard after this court has determined the questions of state law at issue in the case.

■ The plaintiff next urged that we should answer question 1 in the affirmative, arguing that defendant can be held liable for bad faith toward Cianci as an insured under its workers' compensation policy. Specifically, plaintiff alleged that under G.L.1956 (1986 Reenactment) § 28–36–5, he, as an employee, was a statutory insured and, as an insured, had a right of action against defendant pursuant to § 9–1–33. We disagree.

The relevant statutes that address this issue are § 28–36–5:

"Every [workers' compensation] policy shall cover the entire liability of the employer under * * * [the Workers' Compensation Act] * * * and shall contain an agreement by the insurer to the effect that the insurer shall be directly and primarily liable to the employee, and, in the event of his death, to his defendants, to pay to him or them the compensation, if any, for which the employer is liable";

and § 9–1–33, "Insurer's bad faith refusal to pay a claim made under any insurance policy":

"(a) Notwithstanding any law to the contrary, an *insured* under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing said policy, when it is alleged said insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of said policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under said contract of insurance." (Emphasis added.)

The plaintiff's essential contention was that the first statute made him an insured and the second granted him, as an insured, the ability to sue defendant for its alleged bad-faith refusal to pay his claim. Section 9–1–33, however, does not define an "insured." Because the policy issued by defendant to employer is not in the record before this court, thus precluding our determination of Cianci's rights under the policy (*see State Automobile and Casualty Underwriters by Automobile Underwriters v. Hartford Accident and Indemnity Co.*, 166 N.W.2d 761, 764–65 (Iowa 1969) (holding that an employee is not an "insured" under a policy that specifies employer as insured and had as the purpose of the coverage to protect employer from liability)), we must look to the applicable Rhode Island statutes to ascertain whether plaintiff is an "insured" and as such would be entitled to file a cause of action against defendant pursuant to § 9–1–33.

We note first that § 28–36–5 provides that under the act, every policy must contain an agreement by the insurer that it shall be directly and primarily liable to the employee for the compensation for which the employer is liable. The plain language of the statute merely grants to the employee the ability to pursue the insurer for any funds due to the employee when the employer is liable to the employee. *See Mustapha v. Liberty Mutual Insurance Co.*, 268 F.Supp. 890, 893 (D.R.I. 1967) (Workers' Compensation Act uses "the words 'employer' and insurer * * * interchangeably * * * denoting an equating of the two," and citing § 28–36–5). Thus, it is

clear that § 28–36–5 equates the liability of an *employer* and an *insurer* but does not equate an *employee* with the *employer* as insureds.

The plaintiff argued, however, that the Colorado Supreme Court had construed identical language in the Colorado Workers' Compensation Act so as to make such an equation. *Travelers Insurance Co. v. Savio,* 706 P.2d 1258, 1272 (Colo.1985). In that case, the court held that one who claims "compensation or benefits may bring an action in tort for bad faith by an insurer." *Id.* at 1273–74. After quoting a section of the act that made "the insurance carrier * * * directly and primarily liable to the employee," the court stated, "Thus, a covered employee stands in the same position as an insured in a private insurance contract." *Id.* at 1272. A closer reading of the case, however, discloses differences which preclude such a holding from applying in the instant case. First, the court noted that both the parties and the amici viewed the case as a first-party, direct-coverage claim. *Id.* at 1272 n. 18. Second, the court never specifically stated that the employee was an insured. Instead, the court spoke of an employee standing "in the same position as an insured in a private insurance contract," *id.* at 1272, thereby allowing the court to treat the employee's claim as "a first-party case because workers' compensation benefits serve a purpose similar to that served by direct coverage insurance contracts." *Id.* at 1272 n. 18. The employee was "[c]onceived of as * * * 'the insured,'" and thus could claim the benefits for himself, in a common-law first-party claim against the insurer. *Id.* at 1272.

Section 9–1–33, on the other hand, specifically designates to the *"insured"* the cause of action against an insurer's bad-faith refusal to pay a claim. It does not permit suits by someone "[c]onceived of as * * * the 'insured'" or "stand[ing] in the same position as an insured." 706 P.2d at 1272. Moreover, by examining the relationship of the parties to the insurance contract, we find reinforcement for the premise that an employee is not an "insured" under the Workers' Compensation Act. In 11 George J. Couch, *Cyclopedia of Insurance Law,* § 44:15 at 205–06

(Anderson 2d ed.1982), in his section on "Employer's Liability Insurance," Couch makes the following observation:

"The parties to the contract of employer's liability or indemnity insurance are the insurer and the employer.

"When by virtue of a contract provision or statutory direction the injured employee has a direct right of action against the insurer, before or after a determination of the amount to which the employee is entitled, the employee has the status of a third-party beneficiary on the contract, *but even then is not a party to the contract of insurance."* (Emphasis added.)

And earlier in his treatise, when addressing liability and indemnity-insurance contracts in general, Couch states:

"The parties to the policy of liability or indemnity insurance are the insurer and the insured, the latter being the person for whose benefit the policy is procured—usually the employer, or owner, or other person procuring the policy. * * * *Even though the existence of the policy may make it more probable that he will be able to receive payment, the injured person is neither an 'insured' nor a 'beneficiary' in the technical insurance-contract meaning of those terms."* (Emphasis added.) *Id.,* § 44:3 at 187.

We believe that the Legislature, in explicitly restricting the right to sue for a bad-faith refusal to pay a claim to an "insured," intended § 9–1–33 to apply only to those claimants who meet "the technical insurance-contract meaning" of the term. Because plaintiff was not a party to the contract and, therefore, was not an insured under the act, he cannot pursue a claim against defendant under § 9–1–33.

Consequently, we answer the first certified question in the negative.

### Question 2

"Does Raymond Cianci, as a third-party to the Nationwide workers' compensation policy, have a cause of action for breach of contract, breach of covenant of good faith and fair dealings, or breach of fiduciary obligation?"

■ We address first the claims for breach of contract and breach of fiduciary duty.

The plaintiff has maintained that he was a statutory insured and, under the language of defendant's policy, a direct beneficiary able to assert his rights as a party to the contract. We disagree. As noted *supra*, plaintiff was not a party to this contract and thus is not a statutory insured. In *Auclair v. Nationwide Mutual Insurance Co.*, 505 A.2d 431, 431 (R.I.1986) (per curiam), this court addressed the relationship between a claimant and the insurer of a third party alleged to be liable and concluded that the relationship between the two entities is an adversarial one. Any obligation to deal in good faith runs only to the insured, *id.*, in this case, the employer. Recognizing that the "claimant is a stranger to the relationship between the insurer and the insured and is not in privity of contract with them," *Bean v. Allstate Insurance Co.*, 285 Md. 572, 575–76, 403 A.2d 793, 795 (Md. Ct.App.1979), we find no support for the contention that an employee may bring suit against the carrier for bad faith, breach of contract, or breach of fiduciary relationship.

■ Addressing next the claim of breach of covenant of good faith and fair dealing, we note at the outset that the duty of an insurer to deal fairly and in good faith, implied by law, sounds in contract as well as in tort. *Bibeault v. Hanover Insurance Co.*, 417 A.2d 313, 319 (R.I.1980); *see also Pickett v. Lloyd's*, 131 N.J. 457, 470, 621 A.2d 445, 452 (1993) ("[a]n insurance company's breach of the fiduciary obligation imposed by virtue of its policy, by its wrongful failure to settle, 'sounds in both tort and contract' "). We shall address the tort implications of defendant's alleged breach of covenant of good faith and fair dealing in our analysis of certified questions 3 and 4 *infra*. In respect to any contractual aspects of the alleged breach, we hold that the adversarial relationship between the claimant and the insurer, coupled with the fact that plaintiff was not a party to the contract, militates against the viability of any contractual claim of an alleged bad-faith action by defendant. A cause of action on a contractual claim lies with the employer, not the employee, absent an assignment of rights under the contract from employer to plaintiff.

Consequently, we answer the second certified question in the negative.

### Questions 3 and 4

"Do the exclusivity provisions of the Rhode Island Workers' Compensation Act apply to Nationwide as the workers' compensation carrier for Ray Cianci, Inc.?

"Would the intentional tort exception to the exclusivity provisions of the Rhode Island Workers' Compensation Act apply to Nationwide as the workers' compensation carrier for Ray Cianci, Inc.?"

These questions relate to the exclusivity provisions of the act, the application of those provisions to defendant as the workers' compensation carrier for the employer, and the issue of whether an exception to the exclusivity provision is provided in the case of intentional torts. Because both of these questions involve the breadth of the exclusivity provisions of the act, we address them together.

In his complaint in Federal District Court, plaintiff alleged the following causes of action: breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duties, and the intentional infliction of emotional distress. We have addressed all these issues save whether plaintiff can maintain causes of action against defendant for the *torts* of breach of covenant of good faith and fair dealing and the intentional infliction of emotional distress.

The defendant has paid benefits to plaintiff since 1983. After defendant contested its liability to pay the costs of plaintiff's liver transplant, the Workers' Compensation Court ordered defendant to pay the medical bills related to the liver injury. The plaintiff asserted in his complaint, however, that defendant's alleged refusal to "promptly, properly, and fully" pay him these benefits caused plaintiff to suffer severe and permanent injuries, emotional distress, and lost wages. The plaintiff argued before this court that defendant's alleged bad-faith "refusal" to pay medical benefits constituted an independent cause of action at common law and further alleged that defendant's "refusal" to pay for

his liver transplant constituted an intentional infliction of emotional distress. The plaintiff claimed that these causes of action were not barred by the exclusivity provision of the act because these injuries did not arise out of and in the course of his employment.

General Laws 1956 (1986 Reenactment) § 28–33–1 provides that an employee who receives a personal injury "arising out of and in the course of his employment" shall be paid compensation under the act. Further, G.L.1956 (1986 Reenactment) § 28–29–17 of the act specifies that the employee waives his common-law rights except in circumstances where he expressly notifies his employer that he wishes to retain these rights, and § 28–29–20 provides:

"The right to compensation for an injury under the [act] * * * and the remedy therefor granted by [the act] * * * shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents or employees; and those rights and remedies shall not accrue to employees entitled to compensation under those chapters while they are in effect."

■ This court has not heretofore addressed the issue of whether a workers' compensation carrier is entitled to the protection of the immunity provisions of the Workers' Compensation Act. We have, however, previously held that if an employee has not properly reserved his or her common-law rights under the act, he or she is barred from bringing a tort action against his or her *employer* if workers' compensation benefits are appropriate. *Lopes v. G.T.E. Products Corp.*, 560 A.2d 949, 950 (R.I.1989); *Hornsby v. Southland Corp.*, 487 A.2d 1069, 1071 (R.I. 1985).

It is the conclusion of this court that the exclusivity provisions of workers' compensation apply to any suit against the employer's workers' compensation carrier as well. Professor Arthur Larson, in his treatise on workers' compensation, begins his examination of the "Exclusiveness of Compensation Remedy" by noting, "Once a workmen's compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier." 2A Arthur Larson, *The Law of Workmen's Compensation,* § 65.11 at 12–1 (1992). In addition, although this court has not addressed the issue under the exclusivity provisions of the Rhode Island act, the issue has been examined in *Mustapha,* 268 F.Supp. at 895, where the Rhode Island's Workers' Compensation Act was held to preclude an employee from suing the employer's workers' compensation insurance carrier. In that case, the employee had claimed that the insurer negligently performed a safety inspection of the work site. *Id.* at 892. In holding that the employee's suit against the insurer was proscribed, the court stated,

"[I]t is the court's opinion that the legislature never envisioned that the insurance carrier would be a third-party and it appears to this court that the whole purpose and scheme of the Rhode Island Act would be perverted if this court interpreted the act in any other manner than to conclude that the employer and insurance carrier have been equalized and * * * the better view is to make the compensation insurer immune from tort liability as the employer is and thus not amenable to suit as a third party." *Id.* at 895.

The court held that the provisions of the act concerning "the right of compensation from the workmen's compensation carrier bars * * * a common law tort action against such workmen's compensation insurance carrier." *Id.* at 893.

The reasoning in *Mustapha* was utilized again in *Latour v. Commercial Union Insurance Co.,* 528 F.Supp. 231, 233 (D.R.I.1981), in which an action was brought by the widows of deceased employees and an employee against the employer's liability and workers' compensation carrier. The court pointed out that although the Rhode Island act did not specifically grant immunity to the compensation insurer, *Mustapha* had extended the employer's immunity under the act to carriers "because the statute essentially equated employers with their compensation carriers throughout its many provisions." *Latour,* 528 F.Supp. at 234. The immunity under the

act was deemed to extend only to "employers and their workers' compensation insurers" and not to liability insurers. *Id.*

We have pointed out *supra* that § 28–36–5 of the act essentially equates the employer and the carrier in respect to the employee. *See Mustapha,* 268 F.Supp. at 893. Allowing the carrier to be liable in a suit by the employee would destroy the employer's and the carrier's equality, which is consistent throughout the act. It is our considered opinion, therefore, that the exclusivity provisions apply to suits against the carrier as well as against the employer.

The plaintiff argued, however, that the exclusivity provisions of the act did not apply in the instant case because the act itself did not apply. The plaintiff alleged that his injuries in the instant case did not arise out of and in the course of his job duties, and that, therefore, his action was not barred by the exclusivity clause. The relationship between the original work injury, plaintiff claimed, and defendant's subsequent allegedly tortious conduct was too tenuous to be subsumed under the protection of the act.

Quoting Professor Larson at length, plaintiff contended that the alleged tortiously inflicted injury at issue in the instant case should be considered separately from the original injury. Indeed, Larson generally supports plaintiff's proposition concerning the intentional infliction of emotional distress in certain circumstances as being a separate injury from that incurred in connection with the employee's job duties. *See generally* 2A Larson, § 68.34(b) at 13–119–125. Larson refers specifically to the case of *Stafford v. Westchester Fire Insurance Co.,* 526 P.2d 37 (Alaska 1974), *overruled on other grounds by Cooper v. Argonaut Insurance Companies,* 556 P.2d 525 (Alaska 1976), in which the Supreme Court of Alaska held that, under Alaska law, "the insurer was outside the role of a carrier and became a person other than the employer, against whom the employee was entitled to bring a civil action for damages" when the carrier committed an intentional tort. 2A Larson, § 68.34(c) at 13–127. Larson goes on to say, however, that the *Stafford* case set off a wave of attempted tort actions on the basis of intentional delay in or

termination of payments or of medical treatments, and in the great majority of these cases a cause of action was held *not* to lie. *Id.* at 13–127–28. Larson noted that a common factor which figured in many of the cases where a cause of action was held not to lie was a statutory administrative penalty for the conduct on which the tort suit was based. *Id.* at 13–145. Such a penalty is evidence of a legislative intent that the remedy for delay in payments should remain in the workers' compensation system, *id.,* and such is our conclusion in respect to the situation in Rhode Island.

■ The enactment of G.L.1956 (1986 Reenactment) § 28–35–17.1 and its enforcement through Rule 2.29 of the Workers' Compensation Court Rules of Practice embody the intention on the part of the Legislature that the forum for resolution of allegations of improper delay of a workers' compensation claim should remain with the Workers' Compensation Court. Both the statute and the rule provide the exclusive remedy and penalty under the act for assessing the costs of delay.

In *DiQuinzio v. Panciera Lease Co.,* 612 A.2d 40, 42 (R.I.1992), this court discussed the policy and rationale behind the act and noted:

"[U]nder the Rhode Island Workers' Compensation Act an injured employee is ensured timely and certain, though limited, compensation. In exchange he or she gives up the right to pursue an action at law that, although potentially more remunerative, is likely to be protracted and may well be unsuccessful. * * * Workers' compensation benefits are meant as full compensation for any loss or harm that is alleged to have been caused by any entity to which immunity from suit is extended under § 28–29–20."

The Workers' Compensation Act thus provides an efficient mechanism by means of which the employee, the employer, and the carrier can resolve disputes relating to work-related injuries and medical payments in a "timely" manner and pay "certain, though limited, compensation." *DiQuinzio,* 612 A.2d at 42. An employee covered under the act

has no common-law right of action against the insurer because the act expressly addresses such claims and thus immunizes the carrier from liability under any common-law suit.

We have considered plaintiff's state constitutional claim as well and find it to be without merit.

■ Finally, we turn to the issue of whether there is an intentional tort exception to the exclusivity provisions of the act. This court has previously held that there is no intentional tort exception to the exclusivity provisions of the act. *Lopes*, 560 A.2d at 951; *Coakley v. Aetna Bridge Co.*, 572 A.2d 295, 296 (R.I.1990). Because we have held *supra* that the exclusivity provisions of the act apply to the insurance carrier, it is evident that an intentional tort exception does not apply to the defendant. Consequently, we answer the third certified question in the affirmative and the fourth certified question in the negative.

The papers in this case are remanded to the United States District Court for the District of Rhode Island.

BOURCIER, J., did not participate.