Grazina KULAWAS et al.

v.

RHODE ISLAND HOSPITAL.

No. 2008–223–Appeal.

Supreme Court of Rhode Island.

May 11, 2010.

Lauren E. Jones, Esq., Providence, for Plaintiff.

Thomas J. Fay, Esq., for Defendant.

---

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The plaintiff, Grazina Kulawas (Kulawas or plaintiff), appeals from a Superior Court grant of summary judgment in favor of the defendant, Rhode Island Hospital (hospital or defendant). Kulawas argues on appeal that the hearing justice erred in holding that the release[1] Kulawas entered into in connection with a workers' compensation claim against her employer barred any subsequent civil action against the employer arising from the same incident. For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

Kulawas had been employed as an administrative secretary in the Department of Medicine at the hospital since 1998. On April 5, 2005, while walking down a ramped corridor on her way to lunch in the hospital cafeteria, plaintiff "missed a step" and was propelled forward. She fractured her right femur in the resulting fall.

On September 8, 2005, plaintiff filed a petition in the Workers' Compensation Court (WCC) against the hospital, seeking medical and weekly indemnity benefits for the work-related injury. The defendant denied liability, and Kulawas demanded a trial, which commenced on January 9, 2006. However, on March 2, 2006, while the decision was pending, the parties agreed to settle the claim for $48,000. A settlement proposal was submitted to the WCC trial judge based on G.L. 1956 § 28–33–25.1 entitled "Settlement of disputed cases;"[2] a procedure that commonly is

---

1. See Appendix A for the release.

2. General Laws 1956 § 28–33–25.1 provides:

"Notwithstanding the provisions of §§ 28–33–25 and 28–33–26, in cases where liability of the employer for payment of workers'

known as a "deny and dismiss." In exchange for the payment of $48,000, Kulawas executed a document entitled "Workers' Compensation Release" (release), in which she acknowledged that there was a bona fide dispute between the parties concerning whether she was entitled to workers' compensation benefits for the claimed injury under the Workers' Compensation Act (act). Accordingly, in exchange for a monetary settlement, Kulawas agreed to:

> "remise, release and forever quitclaim unto the said Rhode Island Hospital/Lifespan and their workers' compensation insurance carrier, The Beacon Mutual Insurance Company, its successors and assigns, *all* due debts, claims, demands, actions or *causes of action,* which I now have, ever had or in the future may have against said Rhode Island Hospital/Lifespan and their workers' compensation insurance carrier, The Beacon Mutual Insurance Company, for the claimed injury under the provisions of the Workers' Compensation Statute of the State of Rhode Island, and more specifically any and all claims for compensation whether total, partial or specific, medical, hospital and any and all other expenses and any and all other payments provided for under the said Workers' Compensation Act of the State of Rhode Island, by reason of the aforesaid

claimed work related injury." (Emphases added.)

The release also provided that Kulawas agreed that:

> "This release is specific to the claim that the injury is work-related and does not bar possible nonwork-related claims."

On March 6, 2006, in accordance with § 28–33–25.1, the WCC trial judge reviewed the proposal and entered a decree denying and dismissing Kulawas's petition (decree). In accordance with the statute, the decree provided that the claimed injury "did not occur in the course of [Kulawas's] employment" and that the payment received "shall not be deemed to be the payment of compensation benefits, but shall be considered a compromise payment of a disputed claim." The workers' compensation action thereupon was concluded.

Nonetheless, on July 30, 2007, Kulawas filed suit in Providence Superior Court, alleging that her injury was the result of the hospital's negligent failure to maintain the corridor in a reasonably safe condition and its failure to warn of a dangerous condition.[3] Additionally, plaintiff alleged that the hospital violated its duty of care by negligently failing to equip the ramp with a railing.

---

compensation benefits has not been finally established, the parties may submit a settlement proposal to the [W]orkers' [C]ompensation [C]ourt for approval. If, upon consideration, a judge of the [W]orkers' [C]ompensation [C]ourt deems the settlement proposal to be in the best interest of the parties, including the employee, employer, insurance carrier, and where applicable the center for Medicare and Medicaid services (CMS) as their interests may apply, the judge may approve the settlement. Payment by the employer or insurer shall not be deemed to be the payment of workers' compensation benefits, but shall be considered a compromise payment of a

disputed claim. The settlement and payment pursuant to it shall not be subject to liens set forth in § 28–33–27(b). Upon payment, the employer and insurer shall be entitled to a duly executed release that fully and finally absolves and discharges the employer and insurer from any and all liability arising out of the claimed injury."

3. Kulawas's husband joined in the suit, asserting that he suffered loss of care and companionship because of her injuries. Because his right to damages is derivative, we need not separately address it.

The defendant filed a motion for summary judgment on the ground that the exclusivity provision in G.L. 1956 § 28–29–20 barred this subsequent action. The hospital also alleged that this action was barred because plaintiff failed to preserve her common law right to sue her employer for personal injuries. On July 1, 2008, the Superior Court heard arguments based on plaintiff's contention that § 28–33–25.1 was ambiguous. The plaintiff's counsel argued that the statute was ambiguous because it did not also provide that upon payment of a settlement "the employer and insurer shall be entitled to a duly executed release as an employer and third party tortfeasor." According to plaintiff, the decree included "a clear finding that [the injury was] not work related and this statute and the decree and the manner in which the settlement was proposed are at odds."

The hearing justice rejected this argument and declared that even if the statute was ambiguous, which she declared it was not, she would resolve the ambiguity in favor of the hospital because she was satisfied that "the legislative intent would be to allow [this] claimant to benefit from the Workers' Compensation process which is a quicker and easier process than coming into the Superior Court." The hearing justice ruled that in the workers' compensation context, when an employer makes an offer of settlement and the WCC approves it, "[t]hey're not admitting that they are the employers, but they're willing to resolve this [as a] compromised settlement[;] but if they do, it's over, your day in court has ended and I think that makes some sense." She declared that to construe the statute otherwise would achieve an absurd result.

With respect to counsel's contention that the release specifically reserved plaintiff's rights against a third-party tortfeasor, the hearing justice agreed that the reservation could apply to third-party tortfeasors, but not to the employer or the employer's insurer. In sum, the hearing justice declared that the statute was clear and unambiguous and Kulawas could not bring a subsequent action against the hospital to recover for the same injuries stemming from the same incident. The hearing justice granted summary judgment in favor of the hospital, and Kulawas filed this timely appeal.

## Standard of Review

This Court reviews a decision granting summary judgment on a *de novo* basis. *Willis v. Omar*, 954 A.2d 126, 129 (R.I.2008). "[We] will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, [this Court] conclude[s] that no genuine issue of material fact exists and that the moving party is entitled to [summary] judgment as a matter of law." *Id.* (citing *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.2005)). Additionally, we review questions of statutory interpretation *de novo. Waterman v. Caprio*, 983 A.2d 841, 844 (R.I.2009). When the language of the statute is clear and unambiguous, it is our responsibility to give the words of the enactment their plain and ordinary meaning. *Id.* Further, when confronted with an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *Id.* (quoting *State v. Greenberg*, 951 A.2d 481, 489 (R.I.2008)).

## Issues on Appeal

Before this Court, plaintiff contends that it was error for the hearing justice to grant summary judgment in favor of the hospital because plaintiff's claim was not barred by the exclusivity provision of the act. The plaintiff argues that because the terms of the settlement agreement, as well as the release and decree,

provide that plaintiff's injury was not work-related, it was not covered by the act and the exclusivity provision has no relevance in this case. As support for this contention, plaintiff directs our attention to cases involving the "going-and-coming rule" in workers' compensation jurisprudence. According to plaintiff, the hospital apparently relied upon the going-and-coming rule when it denied Kulawas's claim for benefits.[4] However, defendant argues that this assertion "is unsupported by any written or oral argument submitted before the [WCC] or the Superior Court." Before this Court, defendant contends that the injury resulted from a fall that was idiopathic in nature.[5] However, our holding does not depend on the resolution of this issue because the parties reached a deny-and-dismiss settlement in the WCC.

Lastly, plaintiff argues that she is entitled to sue the hospital for negligence notwithstanding her failure to preserve her common law right to do so in accordance with §§ 28–29–17 and 28–29–20. The plaintiff bases this argument on her contention that she did not receive workers' compensation benefits, and, therefore, these statutes do not apply.

## Analysis

Reduced to its essence, the issue in this case centers on plaintiffs contention that the $48,000 payment she received in the WCC, in accordance with § 28–33–25.1, which was not subject to third-party liens under the act, was payment for a nonwork-related injury that she suffered on her employer's premises. According to plaintiff, because the parties agreed that the injury was not work-related, it was not covered by the act, and, therefore, the exclusivity provision set forth in § 28–29–20 does not apply.

The plaintiff's contentions largely rest on the language of the release and the decree; she argues that, although § 28–33–25.1 specifically provides that: "[u]pon payment, the employer and insurer shall be entitled to a duly executed release that fully and finally absolves and discharges the employer and insurer from any and all liability arising out of the claimed injury[,]" the parties in this case agreed to a release that provided defendant with less than that to which it was entitled.

## The Exclusivity Provision

█ We begin by noting that chapter 33 of title 28, including § 28–33–25.1, the provision that provides for a compromise settlement of a disputed claim, falls squarely within the act's exclusivity provision. Section 28–29–20 provides in relevant part as follows:

"**Rights in lieu of other rights and remedies.**—The right to compensation for an injury under chapters 29–38 of

---

4. In the workers' compensation context, the "going-and-coming" rule operates as a bar to compensation for injuries that occur while an employee is traveling to or from the workplace. *McGloin v. Trammellcrow Services, Inc.*, 987 A.2d 881, 886 (R.I.2010). Because of the rule's harshness, several fact-specific exceptions have been recognized by this Court, including with respect to situations in which the employee can demonstrate that a nexus or causal connection exists between the injury suffered and the employment. *Toolin v. Aquidneck Island Medical Resource,* 668 A.2d 639, 640 (R.I.1995).

5. An idiopathic fall has been described as a fall that occurs "[w]hen an employee is suddenly overtaken by an internal weakness" such that the employee suffers an injury induced by an underlying physical condition unrelated to the employment. *Riley v. Oxford Paper Co.,* 149 Me. 418, 103 A.2d 111, 113 (1954). *See generally Zuchowski v. United States Rubber Co.,* 102 R.I. 165, 229 A.2d 61 (1967); *Corry v. Commissioned Officers' Mess (Open),* 78 R.I. 264, 81 A.2d 689 (1951).

this title, and the remedy for an injury granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees; * * *."

It is undisputed that Kulawas obtained a remedy in the WCC and that a decree in accordance with chapter 33 of title 28 was issued. However, plaintiff contends that it is the release language and not the exclusivity provision of the act that controls the result in this case. The plaintiff directs our attention to *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379 (R.I.1991), a declaratory judgment action in which Shirley Farr was injured in an automobile collision with an uninsured motorist during the course of her employment. *Id.* at 379–80. Farr was driving a vehicle owned by her employer and insured by Aetna. *Id.* Aetna also was the employer's workers' compensation carrier under a separate insurance policy. *Id.* at 380. Farr's claim for workers' compensation benefits, defended by Aetna, was settled, and the parties executed a release that specifically referred to Farr's workers' compensation claim, but not her uninsured motorist claim. *Id.* at 380–81. Farr subsequently sought uninsured motorist benefits under the Aetna automobile policy, by filing a claim for arbitration. *Id.* at 380. Aetna filed a complaint for declaratory judgment, alleging that by executing a release in connection with her workers' compensation

claim, Farr forfeited all causes of action resulting from the collision.[6] *Id.* This Court concluded that the release was ambiguous because it did not refer to the uninsured motorist claim. *Id.* at 381.

The case before us does not approach the complexity of *Farr*; in which this Court was faced with two separate policies of insurance. We concluded that the release was ambiguous, a claim that was raised below but not pressed on appeal. *Id.* at 382. Our holding in *Farr* has little relevance to § 28–29–20's exclusivity provision and has no bearing whatsoever on the preclusive effect of an employee's failure to preserve his or her common law rights.

Furthermore, this term in *Waterman*, this Court had occasion to address the pension setoff consequences of a settlement entered in accordance with § 28–33–25.1. In *Waterman*, 983 A.2d at 843, the plaintiff's retirement benefits were offset against his workers' compensation settlement as required by G.L.1956 § 36–10–31.[7] The plaintiff argued that the setoff provision was misapplied to a settlement under § 28–33–25.1 and further that the state retirement system should be estopped from making the offset because of erroneous statements made by its-then assistant director. *Waterman*, 983 A.2d at 843–44. This Court rejected those arguments; we concluded that a settlement reached in accordance with the provisions of § 28–33–25.1, "constitutes an 'amount paid or pay-

6. This case was complicated further when the Peerless Insurance Company, which was Farr's uninsured motorist carrier, moved to intervene, contending that Aetna, not Peerless was obligated to pay the uninsured benefits. *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379, 380 (R.I.1991).

7. General Laws 1956 § 36–10–31 provides in pertinent part:

"Any amount paid or payable under the provisions of any workers' compensation law or as the result of any action for damages for personal injuries against the [S]tate of Rhode Island on account of the death or disability of a member [of the retirement system] shall be offset against and payable in lieu of any benefits payable out of funds provided by the state under the provisions of this chapter on account of the death or disability of the member."

able under the provisions of any workers' compensation law' for purposes of the offset * * *." *Waterman,* 983 A.2d at 845 (quoting § 36–10–31). Further, we held that estoppel did not apply in *Waterman,* based on representations made by the retirement system that a settlement under § 28–33–25.1 did not constitute workers' compensation benefits or payments, such that the offset provision would be triggered. *Waterman,* 983 A.2d at 846. We concluded that because the fact that the statements were erroneous and *ultra vires,* estoppel was not available. *Id.*

Additionally, we are of the opinion that our holding in *Manzi v. State,* 687 A.2d 461 (R.I.1997) (mem.), controls the result in this case. In *Manzi,* summary judgment was entered with respect to the plaintiff's tort claim against his employer, the State of Rhode Island, based on a workers' compensation settlement in accordance with § 28–33–25.1. *Manzi,* 687 A.2d at 462. The Superior Court hearing justice and this Court on appeal concluded that Manzi's tort claims were barred because of the release executed in the WCC and the exclusivity provision of the act. *Id.* Significantly, in *Manzi,* the plaintiff argued that because the settlement he reached with his employer was a compromise payment of a disputed claim *"and not payment of workers' compensation benefits,"* he could proceed with his civil action. *Id.* (emphasis added). This Court held that the clear and unambiguous language of § 28–33–25.1 specifies that "the employer and insurer shall be entitled to a duly executed release which fully and finally absolves and discharges the employer and insurer from any and all liability arising out of the claimed injury," such that "Manzi discharged defendants from *any* liability when he signed the release pursuant to § 28–33–25.1." *Manzi,* 687 A.2d at 462 (emphasis added).

Moreover, in *Manzi,* 687 A.2d at 462, the employer argued that the plaintiff was barred from pursuing a tort claim based on § 28–29–20, the exclusivity provision. We declared in clear and unequivocal language:

"Moreover, the exclusivity clause of the Workers' Compensation Act bars plaintiffs from bringing this action. Section 28–29–20 provides that the right to compensation for an injury under title 28 chapters 29–38, and *the remedy received pursuant to those chapters,* 'shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer.'" *Manzi,* 687 A.2d at 462 (emphasis added).

Kulawas argues that the case at bar is different from *Manzi;* the plaintiff in *Manzi* had released all claims against the state when he settled his workers' compensation case, and further, that this Court was not asked to examine the language of the release for ambiguity or specific exclusion. Our decision in *Manzi* did not rest on the breadth of the release or on its language. Indeed, Manzi submitted an affidavit from the state's lawyer, that the parties agreed that the settlement " 'in no way barred' plaintiff from filing a civil action against the state." *Manzi,* 687 A.2d at 462. Although we cannot envision a more explicit waiver of liability on the part of an employer, this evidence equally was unavailing. We held that the exclusivity provision of the act "bars a plaintiff from filing a second cause of action on the basis of a different legal theory in circumstances in which a plaintiff seeks recovery for the same injuries on which his or her workers' compensation claim was based." *Id.* We are satisfied that our holding in *Manzi* determines the issues before us in this case.

The plaintiff also points to the decree entered in the WCC specifying that the claimed injury did not occur in the course of her employment with respondent. The plaintiff argues that, when examined in light of the language in the release stating that it "is specific to the claim that the injury is work-related and does not bar possible non work-related claims," it becomes apparent that the resolution of plaintiff's workers compensation claim expressly was based on preserving claims that were not work-related. Kulawas argues that, although she is precluded from seeking any additional sums in the WCC, she is free to seek payment for "possible nonwork-related claims" because these claims were preserved. We reject this contention and decline to engage in a syllogistic exercise. We are satisfied that if the Legislature intended to exclude a settlement based on a carefully worded release from the provisions of the exclusivity provision of the act, it would have done so in clear and definite language.

■ The state's workers' compensation system "was established to provide expeditious relief to injured workers under a no-fault system of benefits replacing a cumbersome and often lengthy tort system." *Kaya v. Partington,* 681 A.2d 256, 260 (R.I.1996) (citing *Labbadia v. State,* 513 A.2d 18, 21 (R.I.1986)). In creating this statutory compensation scheme, the Legislature clearly intended that this system of benefits serve "as the exclusive remedy available to injured workers, completely replacing all other remedies then available." *Id.* Based on these venerable principles and because we fully are satisfied that the exclusivity provision of the act precludes a subsequent negligence suit against plaintiff's employer, we agree with the hearing justice that plaintiff's day in court has come and gone.

## Waiver of Common Law Rights

The plaintiff contends that, notwithstanding her failure to preserve her common law rights in accordance with §§ 28–29–17 and 28–29–20, she may pursue a tort action against her employer. This argument, again, rests on Kulawas's contention that she "has *not* accepted workers' compensation benefits for a work-related injury" and, therefore, preservation of her common law rights in accordance with § 28–29–17 was unnecessary. We disagree. By its terms, a payment approved by a judge of the WCC, in accordance with § 28–33–25.1, "shall not be deemed to be the payment of workers' compensation benefits, but shall be considered a compromise payment of a disputed claim." It is nonetheless a part of the overall compensation remedy that was enacted by the Legislature.

The monetary award that Kulawas received was issued in accordance with the provisions of the act. The decree issued after a hearing and directed that the settlement amount was not subject to any third-party liens as set forth in § 28–33–27(b). The plaintiff sought and received the benefits of the workers' compensation remedy and she may not avoid the fair exchange for those benefits.

■ An employee who has not retained his or her common law rights under § 28–29–17 is barred by the prohibitions contained in § 28–29–20 from bringing a tort action against his or her employer in situations in which "workers' compensation benefits are appropriate." *Lopes v. G.T.E. Products Corp.,* 560 A.2d 949, 950 (R.I. 1989) (citing *Hornsby v. Southland Corp.,* 487 A.2d 1069, 1071 (R.I.1985)); *see also, Diaz v. Darmet Corp.,* 694 A.2d 736, 737 (R.I.1997). Section 28–29–17, entitled "Waiver of common law rights—Notice of claim of common law right[,]" provides in relevant part that an employee:

"shall be held to have waived his or her right of action at common law to recover damages for personal injuries if he or she has not given his or her employer at the time of the contract of hire or appointment notice in writing that he or she claims that right and within ten (10) days after that has filed a copy of the notice with the director [of the department of labor and training]."

██ One of the foundational precepts of the state's system of workers' compensation is that an injured employee "is ensured timely and certain, though limited, compensation" for workplace injuries in exchange for a waiver of the employee's right to pursue an action at law against the employer. *Cianci v. Nationwide Insurance Co.*, 659 A.2d 662, 669 (R.I.1995) (quoting *DiQuinzio v. Panciera Lease Co.*, 612 A.2d 40, 42 (R.I.1992)). "An employee covered under the act has no common-law right of action against the insurer [or employer] because the act expressly addresses such claims and thus immunizes the carrier from liability under any common-law suit." *Id.* at 669–70. Because it is uncontroverted that the plaintiff availed herself of a workers' compensation remedy and accepted the benefits that were provided, that is, "a compromise payment of a disputed claim," and did not preserve her common law right to recover damages for personal injuries, she is barred from bringing this action.

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.

Justice FLAHERTY, dissenting.

I respectfully dissent from the holding of the majority and am of the opinion that summary judgment was improperly granted in this case. Although I share in my colleagues' admiration of the "venerable principles" of this state's workers' compensation system, it is my opinion that employers and insurers are free to negotiate for less than that to which they are entitled under G.L. 1956 § 28–33–25.1. *See* 2 John P. Ludington et al., *Modern Workers Compensation* § 204:16 at 27 (1993) ("A common question is whether a settlement of a tort claim releases a workers' compensation claim, or whether the settlement of a workers' compensation claim releases a tort claim"). Counsel for Rhode Island Hospital conceded as much at oral argument. However, the majority forecloses this possibility by interpreting the exclusivity and immunity provisions of the Workers' Compensation Act (the act) to apply in all instances in which there is a settlement under § 28–33–25.1. I agree that, at first blush, it would appear that those provisions of the act might bar plaintiff's premises-liability claim. In my opinion, however, that is not a correct analysis because of the act's definition of the term "injury" and because construing § 28–33–25.1 as foreclosing the ability of the parties to negotiate for less than a full and final release of all liability collides with the well-established canon of statutory interpretation that requires us to give meaning to every sentence in a statute. *See Local 400, International Federation of Technical and Professional Engineers v. Rhode Island State Labor Relations Board,* 747 A.2d 1002, 1005 (R.I.2000) ("[W]e are mindful that '[t]his [C]ourt has long applied a canon of statutory interpretation which gives effect to all of a statute's provisions, with no sentence, clause or word construed as unmeaning or surplusage.' ") (quoting *Rhode Island Department*

*of Mental Health, Retardation, and Hospitals v. R.B.,* 549 A.2d 1028, 1030 (R.I. 1988)).

### The Exclusivity Clause and Waiver of Common–Law Rights

It has not been established that plaintiff suffered an injury, as that term is defined in the act, to trigger the act's exclusivity provision. *See Hawkes v. Commercial Union Insurance Co.,* 764 A.2d 258, 261–62, 265 (Me.2001) (holding that the tort claims of an employee who released any and all claims under Maine's workers' compensation act were not barred, in part "because the personal injury claims * * * did not arise in the course of his employment," thus rendering the immunity and exclusivity provisions inapplicable). The exclusivity provision of the act provides that "the remedy for an *injury* * * * shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise * * *." G.L. 1956 § 28–29–20 (emphasis added). However, "injury" is a defined term under the statute, which limits it to a "personal injury to an employee arising out of and in the course of his or her employment, connected and referable to the employment." Section 28–29–2(7)(i). Whether plaintiff's broken femur was an injury as defined by the act was the very point of contention between the parties that led to their eventual settlement and the execution of the release. Further, after they successfully negotiated a resolution to the dispute, the parties asked the court to approve their proposed settlement agreement, and the court specifically found as a fact in the WCC decree that the "claimed injury * * * *did not occur in the course of [plaintiff's] employment * * * connected therewith and refer-*

able thereto." (Emphasis added.) Although the parties did not quibble about the fact that plaintiff fell and fractured her femur, it was established that this injury did not occur during the course of her employment. Indeed, they *agreed* that the injury did not so occur.

If the exclusivity provision contained in § 28–29–20 is construed to bar all claims of an employee against an employer after a settlement of a disputed claim under § 28–33–25.1, then the final sentence of § 28–33–25.1, which gives an employer the right to a duly executed release of all liability, would be rendered a nullity. In other words, the General Assembly's inclusion of language entitling the employer to such a release after payment in accordance with a settlement under § 28–33–25.1 would be completely unnecessary if the exclusivity provision were interpreted to serve as an automatic bar to any further employer liability in every case in which there was a settlement of a disputed claim. In light of the statutory language, and in consideration of the canon of statutory interpretation requiring that meaning be given to every sentence, I cannot accept such a result.[8] *See Local 400, International Federation of Technical and Professional Engineers,* 747 A.2d at 1005.

I dissent as well from the majority's holding that Kulawas's premises-liability claim also is barred because she waived her common-law rights when she did not reserve these rights under § 28–29–17 and because she received a workers' compensation remedy under § 28–33–25.1. First, as the majority notes, "a payment approved by a judge of the WCC, in accordance with § 28–33–25.1, 'shall *not* be deemed to be

---

**8.** In my view, the fact that the 258–page act contains no other provision for an "entitlement" to a release bolsters the conclusion that the General Assembly intended for this provision not to automatically release all liability, but to allow the employer to negotiate it in a release.

the payment of workers' compensation *benefits,* but shall be considered a compromise payment of a disputed claim.' " (Emphases added.) This Court has said that "if an employee has not properly reserved his or her common-law rights under the act, he or she is barred from bringing a tort action against his or her employer if workers' compensation benefits are appropriate." *Cianci v. Nationwide Insurance Co.,* 659 A.2d 662, 668 (R.I.1995) (holding that the act immunizes the insurer as well as the employer) (emphasis omitted). In my view, an employee who has not reserved his or her common-law rights is prohibited from bringing a tort action only if workers' compensation *benefits* were appropriate, which is not the case here.[9] Again, for workers' compensation benefits to be appropriate, there must be an injury that falls within the definition under the act. Also, in my opinion, construing § 28–29–17 to apply in every instance in which there is a settlement and accompanying remedy received under § 28–33–25.1 further would render the final sentence of that section entitling the employer to a release mere surplusage. *Local 400, International Federation of Technical and Professional Engineers,* 747 A.2d at 1005.

### The Effect of *Manzi*

I acknowledge that in the case of *Manzi v. State,* 687 A.2d 461, 461–62 (R.I.1997) (mem.), this Court held, in an order, that a plaintiff's civil action, which was based on the same injuries that were the foundation of his settlement of a disputed workers' compensation claim under § 28–33–25.1, was barred because the employee had signed an unquestionably comprehensive release of all liability stemming from the claimed injury. In our order, in dicta, we

also observed that the exclusivity portion of the act would have barred the plaintiff's civil suit against his employer. *Manzi,* 687 A.2d at 461–62. In making that observation, however, we did not analyze the act's definition of the word "injury." *Id.* Therefore, I do not agree that the exclusivity clause, in and of itself, operates to bar civil claims in all situations where the parties have executed a release pursuant to § 28–33–25.1, because such a construction would reduce the final sentence of that section, entitling the employer to a release, to mere "surplusage." *Local 400, International Federation of Technical and Professional Engineers,* 747 A.2d at 1005.

### The Interpretation of the Release

After carefully examining the record, particularly the release, settlement proposal, and WCC decree, in a light most favorable to plaintiff as the nonmoving party, it is my opinion that there are genuine issues of material fact about whether plaintiff's release encompasses only her workers' compensation claim or, alternatively, whether it extinguishes all claims, including her premises-liability claim. *Aetna Casualty & Surety Co. v. Farr,* 594 A.2d 379, 381 (R.I.1991) (citing *Lennon v. MacGregor,* 423 A.2d 820 (R.I.1980)). In the absence of a record that could illuminate what, if any, negotiations occurred between the parties concerning the release, and without evidence of their intent when they agreed to its terms, the release, in my opinion, is ambiguous. *See* 2 *Modern Workers Compensation* § 204:16 at 27 (explaining that the scope of a release "is primarily a question of intent as manifested by the settlement agreement terms"). Therefore, the extraordinary remedy of

---

**9.** It is worth noting that in *Cianci v. Nationwide Insurance Co.,* 659 A.2d 662, 664 (R.I. 1995), the injured worker had collected workers' compensation benefits for more than a decade before bringing a tort action against the insurer. Clearly, workers' compensation benefits were "appropriate" in that case.

summary judgment was inappropriate, and I would vacate it. *See Canavan v. Lovett, Schefrin and Harnett,* 862 A.2d 778, 783 (R.I.2004) (citing *Johnston v. Poulin,* 844 A.2d 707, 710 (R.I.2004)). For these reasons, I respectfully dissent from the majority's holding.

## APPENDIX A

### WORKERS' COMPENSATION RELEASE

WHEREAS, Grazina Kulawas, of the Town of East Greenwich, State of Rhode Island, claims that on or about April 5, 2005, she suffered a work-related injury, to wit, a right femur fracture, which arose out of and in the course of her employment, which claimed injury is alleged to have been compensable under the provisions of the Rhode Island Workers' Compensation Act.

WHEREAS, the said employer, Rhode Island Hospital/Lifespan and their workers' compensation insurance carrier, The Beacon Mutual Insurance Company, denies the claimed work-related injury of the said petitioner, and

WHEREAS, there is a bona fide dispute existing between the parties as to whether or not the said petitioner is entitled to workers' compensation benefits for the claimed injury under the Workers' Compensation Act of the State of Rhode Island, and

WHEREAS, the said petitioner requests and desires the payment from the said respondent of the sum of Forty-Eight Thousand ($48,000.00) Dollars to her in lieu of all payments of workers' compensation for total, partial or specific compensation and all other expenses including medical and hospital expenses under the Workers' Compensation Act of the State of Rhode Island, which amount under all the circumstances is admitted by all parties to be fair, adequate and reasonable.

NOW THEREFORE, I, Grazina Kulawas, for and in consideration of the sum of Forty-Eight Thousand ($48,000.00) Dollars to me, paid by Rhode Island Hospital/Lifespan and their workers' compensation insurance carrier, The Beacon Mutual Insurance Company, the receipt of which is hereby acknowledged, do hereby remise, release and forever quitclaim unto the said Rhode Island Hospital/Lifespan and their workers' compensation insurance carrier, The Beacon Mutual Insurance Company, its successors and assigns, all due debts, claims, demands, actions or causes of actions, which I now have, ever had or in the future may have against said Rhode Island Hospital/Lifespan and their workers' compensation insurance carrier, The Beacon Mutual Insurance Company, for the claimed injury under the provisions of the Workers' Compensation Statute of the State of Rhode Island, and more specifically any and all claims for compensation whether total, partial or specific, medical, hospital and any and all other expenses and any and all other payments provided for under the said Workers' Compensation Act of the State of Rhode Island, by reason of the aforesaid claimed work related injury.

Without in any way limiting the foregoing, I hereby state that I voluntarily seek and desire the payment of the aforesaid sum, that I know of the petition now pending in the Workers' Compensation Court in the State of Rhode Island wherein I am seeking compensation, medical expenses and other payments under the Workers' Compensation Act of the State of Rhode Island; that I hereby expressly authorize my attorney, Gregory L. Boyer Esquire, to assent to a decision, decree or stipulation to be filed in the Workers' Compensation Court whereby my petition for compensation for the claimed injury and all other

relief under the Workers' Compensation Act of the State of Rhode Island shall be denied and dismissed as a nonwork-related injury; that I further understand that by my acceptance of the aforesaid sum of money and by the entry of the aforesaid decision, decree or stipulation, I have set up an effective bar against my recovering any additional sum or sums of money for the claimed injury, under the Workers' Compensation Act of the State of Rhode Island, and that I voluntarily seek and desire payment of the aforesaid sum having full knowledge of the above facts.

This release is specific to the claim that the injury is work-related and does not bar possible nonwork-related claims.

IN WITNESS WHEREOF, I have hereunto set my hand and seal in duplicate original in <u>Providence</u> on this <u>2nd</u> day of <u>March</u>, A.D., 2006.

/s/ Grazina Kulawas
Grazina Kulawas

Executed in the presence of:

/s/ [Signature]

STATE OF RHODE ISLAND

PROVIDENCE, SC.

On this <u>2nd</u> day of <u>March</u>, 2006, before me personally appeared Grazina Kulawas, to me known and known by me to be the party described in the aforesaid instrument and who executed the above instrument and acknowledged to me that she executed the same.

/s/ [Signature]
Notary Public