**SHELTER HARBOR FIRE DISTRICT**

v.

**Charles E. VACCA, in his capacity as Tax Assessor, Town of Westerly.**

No. 2003–17–Appeal.

Supreme Court of Rhode Island.

Nov. 26, 2003.

Elizabeth Noonan McDonough, for Plaintiff.

Peter Olsen, Wickford, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## O P I N I O N

PER CURIAM.

The defendant, Charles E. Vacca (Vacca), acting in his capacity as tax assessor for the Town of Westerly, appeals from an entry of summary judgment in favor of the plaintiff, Shelter Harbor Fire District (Shelter Harbor) and the denial of his cross-motion for summary judgment and motion to file a counterclaim.

This case came for oral argument on October 7, 2003, before the Supreme Court, sitting in Westerly, pursuant to an order directing the parties to show cause why the issues raised by this appeal should not summarily be decided. Having considered the record, the parties' memoranda, and the oral arguments of counsel, we conclude that cause has not been shown, and we proceed to decide the appeal at this time.

At the outset we note that the trial justice issued her written decision on August 5, 2002, and an order was entered on November 7, 2002. Vacca filed a notice of appeal on November 22, 2002. A final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure had not been entered at that time. When this case came before a single justice of this Court in accordance with Article I, Rule 12A(3) of the Supreme Court Rules of Appellate Procedure, however, it was remanded to the Superior Court for entry of final judgment, which occurred on June 10, 2003. We treat the appeal, therefore, as if it had been filed after the entry of judgment. *See Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1114 n. 1 (R.I.2002) (per curiam).

The primary issue presented by this appeal is one of statutory construction; the essential facts are not in dispute. Shelter Harbor was incorporated in 1937 by a private act of the Rhode Island General Assembly. 1937 R.I. Acts & Resolves p. 322, § 1. The act delineates the geographical boundaries of the district, provides for the eligibility of property owners within such district to vote, the holding of annual and special meetings, the election of officers, the authority to tax, and the power to prescribe bylaws and other rules and regulations for various purposes. The act also authorizes Shelter Harbor to

"raise money by tax * * * for the purchasing and procuring of implements and apparatus for the extinguishment of fires; for the purpose of introducing and supplying the inhabitants of said district with water for fire, and all necessary purposes; for the payment of such police force as it may deem necessary for the protection of the property of the inhabitants of said fire district from fire and for the preservation of the public peace; for the purchase of land within or outside of said fire district and the erection of buildings, for the use of said fire district, on any such land; for the building and maintaining of sidewalks and roads within said fire district and for the care of roads or roadways and of sidewalks and for the protection of such roads, roadways or sidewalks; and for the payment for services and labor in the collection and removal of offal, swill, garbage and rubbish." "An Act to Incorporate the Shelter Harbor Fire District," 1937 R.I. Acts & Resolves p. 325, § 6 (1937 Act).

In 1950 the General Assembly amended the 1937 act of incorporation by adding an additional section stating that "[a]ll real and personal estate held by the district

and not used for commercial purposes shall be exempt from state and local taxation." 1950 R.I. Acts & Resolves p. 791, § 12 (1950 Act).

The next year the General Assembly enacted a public law, limiting the tax-exempt status of property owned by any fire district in Westerly:

"Notwithstanding the provisions of any other law the real and personal property of any fire district * * * located in the town of Westerly shall be exempt from taxation only to the extent that the same is used for fire fighting purposes, or to the extent that the land, buildings, structures and equipment of such district or company are actually used for the purposes authorized by its act of incorporation or charter." P.L. 1951, ch. 2869 § 1.

The act also states:

"No fire district * * * shall hereafter own or hold any property, real or personal, which is not used for the purposes authorized by its act of incorporation or charter; provided, however, that this section shall not apply to any property owned by any fire district at the time of the passage of this act." Id. at § 2.

The statutory authority of Shelter Harbor to own and acquire real or personal property lay in repose for the next forty years, until 1991, when the General Assembly again amended the 1937 Act by passage of "An Act In Amendment of an Act, Entitled 'An Act to Incorporate the Shelter Harbor Fire District' Passed at the January Session, A.D. 1937." 1991 R.I. Acts & Resolves p. 16 (1991 Act). Shelter Harbor was granted sweeping authority to acquire real property, "within or outside of said fire district, which is an important natural area," id. at § 6(c)(4); or to acquire, construct and maintain "buildings, boardwalks, piers, wharves, docks, slips, floats, ramps, sea walls,

breakwaters and jetties within or outside of said fire district for any purpose, including, without limitation, recreational purposes," id. at § 6(c)(6); to acquire and maintain anchorages and moorings; and to acquire "property, whether real or personal, within or outside of said district for any purpose including, without limitation, recreational purposes." Id. at § 6(c)(9). Finally, the act provides a broad grant authorizing Shelter Harbor to spend money "[f]or any other purpose applicable to the operation of a fire district or agreed to by the voters of said fire district." Id. at § 6(c)(10).

The dispute between Shelter Harbor and the Westerly tax assessor concerns the assessed valuations of December 31, 1999, on ten parcels of real estate owned by Shelter Harbor. Shelter Harbor pursued its administrative remedies under G.L.1956 § 44–5–26, asserting that the assessments were illegal because the properties are exempt. When the Board of Assessment Review failed to act within the ninety-day time frame required by said statute, Shelter Harbor filed an action in the Superior Court on June 6, 2001.

In her decision the trial justice opined that in light of G.L.1956 § 44–3–3(10), which exempts from taxation "[p]roperty especially exempt by charter," the 1937 Act, as amended by the clear and unambiguous language of the 1950 Act, provides an exemption to Shelter Harbor as long as the real estate is not used for commercial purposes. We discern no error in the trial justice's conclusion.

■ The 1937 Act granted Shelter Harbor broad authority to purchase "land within or outside of said fire district * * * for the use of said fire district." 1937 R.I. Acts & Resolves p. 325, § 6. The 1950 Act provided a tax exemption for property "not used for commercial purposes." 1950 R.I.

Acts & Resolves p. 791, § 12. Vacca contends that the 1951 public law limited the effect and scope of the 1950 amendment and "rolled back" the exemption only to properties used for fire fighting purposes or for purposes authorized by the 1937 Act.

 This Court reviews questions of statutory interpretation *de novo. State v. Fritz,* 801 A.2d 679, 682 (R.I.2002) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)). Statutory provisions that are *in pari materia* may be construed together "such that they will harmonize with each other and be consistent with their general objective scope." *Local 400, IFOTPE v. Rhode Island State Labor Relations Board,* 747 A.2d 1002, 1004 (R.I.2000) (per curiam) (quoting *In re Doe,* 717 A.2d 1129, 1132 (R.I.1998)). "It is also true that repeals by implication are not favored and courts should attempt to construe two statutes that are in apparent conflict so that, if at all reasonably possible, both statutes may stand and be operative." *Providence Electric Co. v. Donatelli Building Co.,* 116 R.I. 340, 344, 356 A.2d 483, 486 (1976).

The 1951 Act did not, as Vacca asserts, "roll back" any tax exemption that has been granted to Shelter Harbor by virtue of the 1950 Act. The General Assembly in 1951 authorized tax exemption not only to the extent that the property is used for fire fighting purposes, but also, to the extent the property is used for purposes authorized by the act of incorporation. Shelter Harbor, by its Act of Incorpo-

ration, as amended in 1950, was granted broad authority to purchase and hold real and personal property, all of which was exempted from taxation unless used for commercial purposes.

Any question concerning the tax-exempt status of Shelter Harbor property, however, was emphatically answered by the virtually limitless authority conferred upon Shelter Harbor in 1991 to acquire real or personal property for "any purpose." Vacca points out that the 1991 Act did not specifically provide tax-exempt status to any property acquired thereunder. No such language was necessary; it already existed under the 1950 Act.

 "A well-established tenet of statutory interpretation posits that the Legislature is 'presumed to know the state of existing law when it enacts or amends a statute.'" *Simeone v. Charron,* 762 A.2d 442, 446 (R.I.2000) (quoting *Providence Journal Co. v. Rodgers,* 711 A.2d 1131, 1134 (R.I.1998)). Thus, when the General Assembly amended Shelter Harbor's act of incorporation in 1991 to authorize additional purposes for land acquisition, the Legislature was charged with the knowledge that this amendment would result in an expansion of property eligible for tax-exempt status under the 1950 Amendment.[1] Therefore, properties used for the purposes set forth in the 1991 amendment qualify for tax-exempt status even though the amendment is silent about the tax-exempt status of those properties.

 Vacca also appeals the denial of his motion to file a counterclaim alleging

---

1. Effective July 17, 2003, the General Assembly further amended the original act of incorporation to limit the exemption from state and local taxation solely to property used for fire fighting purposes. "An Act in Amendment of an Act Passed at the January Session, 1937, Entitled 'An Act to Incorporate the Shelter Harbor Fire District,' Approved April 27, 1937, as Amended at the January Session, 1950, Approved April 25, 1950," (2003–S 1039 and 2003–H 6354). The pertinent language now reads:

"All real and personal estate held by the district shall be exempt from state and local taxation only to the extent that the same is used for fire fighting purposes."

that the tax exemption in favor of Shelter Harbor violated the equal protection clauses of the United States and Rhode Island Constitutions and the equal burden clause of the Rhode Island Constitution. He filed his motion pursuant to Rule 13(a) of the Superior Court Rules of Civil Procedure, which applies solely to "[a] claim which either matured or was acquired by the pleader after serving a pleading." We conclude, however, that Vacca's claim was a compulsory counterclaim because it arose out of the same transaction or occurrence that is the subject matter of Shelter Harbor's claim. *See* Rule 13(a). Compulsory counterclaims must be asserted in the first responsive pleading. *Id.* This Court affirms the denial of Vacca's counterclaim by the lower court since Vacca did not plead his compulsory counterclaim until almost one year after the original complaint was filed. Moreover, Rule 24(d) of the Superior Court Rules of Civil Procedure requires service upon the Attorney General whenever the constitutionality of an act of the Legislature is drawn into question. No evidence was admitted to demonstrate that this requirement had been met.

For the foregoing reasons, we affirm the judgment of the Superior Court, to which we return the papers of this case.