George WATERMAN

v.

Frank CAPRIO, in his capacity as
Treasurer of the State of
Rhode Island et al.[1]

No. 2007–312–Appeal.

Supreme Court of Rhode Island.

Nov. 25, 2009.

1. By operation of Rule 25(d) of the Superior Court Rules of Civil Procedure, the successors to the Rhode Island state treasurer and the executive director of the Rhode Island Employees Retirement System automatically have been substituted for the prior office holders.

Frederick Costello, Esq., Warwick, for Plaintiff.

Thomas R. Gonnella, Esq., Providence, for Defendants.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case comes before us on the plaintiff's appeal from summary judgment entered in the Superior Court in favor of the defendants, Frank Caprio and Frank J. Karpinski (defendants), in their capacities as Rhode Island state treasurer and as executive director of the Rhode Island Employees Retirement System, respectively. The plaintiff, George Waterman (plaintiff), argues three issues on appeal. First, he alleges that the defendants misapplied G.L. 1956 § 36–10–31 in conjunction with G.L. 1956 § 28–33–25.1, and that he is entitled to workers' compensation benefits that erroneously were offset against his disability retirement benefit payments. In the alternative, the plaintiff argues that the defendants should be estopped from offsetting the funds based on erroneous representations that the defendants' employee made to the plaintiff's attorney. Finally, the plaintiff argues that this Court should allow him to resurrect both his workers' compensation and accidental disability retirement claims. For the reasons that follow, we affirm the Superior Court's grant of summary judgment.

## Facts and Travel

The facts of this case are not in dispute. The plaintiff began employment with the State of Rhode Island in 1977 and worked as a correctional officer with the Department of Corrections from 1982 until October 1999. In February 1998, during a "cell extraction"[2] exercise at the Adult Correctional Institutions, plaintiff suffered severe chest pain; he ultimately required a cardiac stent implant. He returned to work for a short period, but stopped working the following year. In January 2000, plaintiff filed a petition with the Workers' Compensation Court, alleging that he was disabled with heart disease and that the illness was related to his employment as a correctional officer. The state opposed the petition, arguing that heart disease was not job related. The plaintiff also filed a claim for an accidental disability retirement from the state.

A few months later, the parties began workers' compensation settlement negotiations as contemplated by § 28–33–25.1. During this time, plaintiff's attorney contacted James Reilly (Reilly), the then-assistant executive director of the Rhode Island Employees Retirement System, to inquire whether any workers' compensation settlement that was paid in accordance with § 28–33–25.1 would be offset against plaintiff's disability retirement payments. Reilly told plaintiff's counsel that as long as the settlement was not considered a workers' compensation payment or benefit, the offset provision set forth in § 36–10–31 of the retirement act would not apply. Shortly after this conversation, plaintiff amended his accidental disability claim with the retirement system and instead applied for ordinary disability retirement benefits.[3]

In June 2000, plaintiff settled the workers' compensation claim based on § 28–33–25.1, and the state paid him $21,250.[4] In September 2000, plaintiff was notified that his retirement payments would not commence until the entire $21,250 was offset against the pension benefits.[5]

The plaintiff filed a two-count complaint for declaratory judgment in January 2001. The first count alleged that defendants misapplied § 36–10–31's[6] offset provision to plaintiff's § 28–33–25.1[7] workers' com-

2. The plaintiff practiced techniques to remove and transport prisoners.

3. An accidental disability claim requires that the disability is the result of a work-related injury, whereas ordinary disability does not require a work-related injury. *See* G.L. 1956 §§ 36–10–12 and 36–10–14.

4. $25,000 minus 15 percent counsel fee.

5. The plaintiff did not receive any disability payments until 2002.

6. Section 36–10–31 provides in pertinent part:

"Any amount paid or payable under the provisions of any workers' compensation law or as the result of any action for damages for personal injuries against the state of Rhode Island on account of the death or disability of a member [of the retirement system] shall be offset against and payable in lieu of any benefits payable out of funds provided by the state under the provisions of this chapter on account of the death or disability of the member."

7. General Laws 1956 § 28–33–25.1 provides in pertinent part:

"Notwithstanding the provisions of §§ 28–33–25 and 28–33–26, in cases where liability of the employer for payment of workers' compensation benefits has not been finally established, the parties may submit a settlement proposal to the workers' compensation court for approval. If, upon consideration, a judge of the workers' compensation court deems the settlement proposal to be in the best interest of the parties, the judge may approve the settlement. Payment by the employer or insurer shall not be deemed to be the payment of workers' compensation benefits, but shall be considered

pensation settlement. The second count alleged that plaintiff detrimentally relied on Reilly's statements; he requested that defendants be estopped from offsetting the disability benefits. The plaintiff moved for summary judgment in August 2001, but the Superior Court denied the motion.

A few years later, the parties filed cross-motions for summary judgment. Addressing count one of the complaint, alleging a misapplication of § 36–10–31, the hearing justice noted that the statute "is not only clear and unambiguous, it has a very, very broad reach" because the Legislature used the phrase "[a]ny amount paid or payable *under any workers' compensation law.*" (Emphasis added.) The hearing justice stated that the offset contemplated by § 36–10–31 would apply to any money received under any type of workers' compensation payment, including a settlement in accordance with § 28–33–25.1, regardless of whether or not it is considered the "payment of workers' compensation benefits." Section 28–33–25.1. Additionally, the hearing justice noted that plaintiff's estoppel argument failed—not only because Reilly's statements were erroneous and conflicted with state law, but also because there was no evidence that Reilly made the statements with the intention of inducing plaintiff to act. The Superior Court granted defendants' motion for summary judgment during a May 2007 hearing, and this timely appealed ensued.

## Standard of Review

It is well established that this Court uses a *de novo* standard to review a hearing justice's decision to grant summary judgment. *Lynch v. Spirit Rent–A–Car, Inc.,* 965 A.2d 417, 424 (R.I.2009); *Lamarque v. Fairbanks Capital Corp.,* 927

A.2d 753, 756 (R.I.2007). The facts in this case are not in dispute; therefore, we are confronted only with a question of law. *Lamarque,* 927 A.2d at 756. This Court also uses a *de novo* standard to review a trial justice's rulings on questions of law. *Hilley v. Lawrence,* 972 A.2d 643, 649 (R.I. 2009).

Additionally, we review issues of statutory interpretation *de novo See Town of North Kingstown v. Albert,* 767 A.2d 659, 662 (R.I.2001) (recognizing that questions of statutory interpretation are questions of law and are therefore reviewed *de novo);* see also *Lynch,* 965 A.2d at 425; *State v. Greenberg,* 951 A.2d 481, 489 (R.I. 2008). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Iselin v. Retirement Board of the Employees' Retirement System of Rhode Island,* 943 A.2d 1045, 1049 (R.I.2008) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996)); see also *Lynch,* 965 A.2d at 425; *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1049 (R.I.1994). When this Court examines an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *Greenberg,* 951 A.2d at 489 (quoting *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998)); *Iselin,* 943 A.2d at 1049 (noting that, when statutory language is clear and unambiguous, this Court cannot extend the statute's scope).

## Statutory Construction

The first issue on appeal is whether a payment made in accordance with a work-

---

a compromise payment of a disputed claim."

The Legislature amended the statute in 2004 (P.L. 2004, ch. 293, § 3), but the amendment has no bearing on the case at bar.

ers' compensation settlement reached under § 28–33–25.1, constitutes an "amount paid or payable under the provision of any workers' compensation law" for purposes of the offset required by § 36–10–31.

Section 36–10–31 requires that "[a]ny amount paid or payable under the *provisions of any workers' compensation law * * * shall be offset* against and payable in lieu of any benefits payable out of funds provided by the state * * * on account of the death or disability of the member." (Emphasis added.) The plaintiff contends that payments made under § 28–33–25.1 are not settlements under the Workers' Compensation Act as contemplated by that statute.[8] The hearing justice disagreed with plaintiff—correctly, we conclude.

 Section 28–33–25.1 provides in pertinent part:

"[I]n cases where liability of the employer for payment of workers' compensation benefits has not been finally established, the parties may submit a settlement proposal to the workers' compensation court for approval. If, upon consideration, a judge of the workers' compensation court deems the settlement proposal to be in the best interest of the parties, the judge may approve the settlement. Payment by the employer or insurer shall not be deemed to be the payment of workers' compensation benefits, but shall be considered a compromise payment of a disputed claim."

The plaintiff contends that, because § 28–33–25.1 provides that settlements made under the statute "shall not be deemed to be the payment of workers' compensation benefits," such settlements are not within the reach of § 36–10–31. Mindful that this

Court is the final arbiter on questions of statutory construction, we are of the opinion that settlements pursuant to § 28–33–25.1 are included among the payments contemplated by § 36–10–31. *Matter of Falstaff Brewing Corp.,* 637 A.2d at 1049.

The terms of § 36–10–31 are not only clear and unambiguous, but also very broad. Section 36–10–31 requires offsets to "[a]ny amount paid or payable under the provisions of any workers' compensation law." Section 28–33–25.1 is found in the Workers' Compensation Act. *See* G.L. 1956 § 28–29–1 (noting "Chapters 29–38 of this title may be cited as the 'Workers' Compensation Act' "). Additionally, this Court previously has recognized that § 28–33–25.1 is a part of this state's workers' compensation law. *See Manzi v. State,* 687 A.2d 461, 462 (R.I.1997) (mem.) (opining that the workers' compensation exclusivity clause is triggered by a workers' compensation settlement under § 28–33–25.1). Although plaintiff suggests otherwise, the offset required by § 36–10–31 simply is not limited to traditional workers' compensation benefits. If the Legislature wanted to so limit the offsets, it could have done so when it enacted the statute; however, the broader terminology of the enactment embraces, "*any* workers' compensation law." (Emphasis added.) This leads us to conclude that settlement payments made pursuant to § 28–33–25.1 are payable under the state's workers' compensation scheme.

We are of the opinion that the Legislature used this broad language to ensure that money received under any workers' compensation claim is offset against disability retirement payments to prevent a state employee from recovering twice. We interpreted similar language used in the

---

**8.** The plaintiff raises numerous issues on appeal about the alleged misapplication and misinterpretation of § 36–10–31 and § 28– 33–25.1. We will address only those arguments we deem appropriate.

City of Providence Code of Ordinances in *Ruggiero v. City of Providence,* 889 A.2d 691, 694 (R.I.2005). The ordinance provided:

> "Any amounts paid or payable under the provisions of any worker's [*sic*] compensation law * * * on account of death or disability of a member, shall be offset against and payable in lieu of any benefits payable out of funds provided by the city * * * on account of the death or disability of the member." *Id.* at 694 n. 5 (citing Article VI section 17–191).

This Court recognized that the city's offset provision "prevent[ed] employees from receiving a windfall by collecting twice from the city for the same injury." *Id.* The Legislature's use of similarly broad language in this instance regarding § 36–10–31 leads us to the same conclusion.

### Estoppel

The plaintiff argues in the alternative that defendants should be estopped from invoking the offset provision of § 36–10–31 because plaintiff relied to his detriment on the statements that Reilly made to plaintiff's attorney. The record reflects that in the spring of 2000 plaintiff's attorney spoke with Reilly and asked him whether § 36–10–31 would apply to a potential workers' compensation settlement under § 28–33–25.1. Reilly indicated that because money received from a § 28–33–25.1 settlement was not workers' compensation benefits or payments, the offset of § 36–10–31 would not apply. The plaintiff argues that he settled his workers' compensation claim and relinquished his accidental disability retirement benefits in exchange for ordinary disability benefits based on Reilly's representations.[9]

"[E]stoppel is 'extraordinary' relief, which 'will not be applied unless the equities *clearly* [are] balanced in favor of the part[y] seeking relief.'" *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.,* 890 A.2d 58, 67 (R.I.2005) (quoting *Southex Exhibitions, Inc. v. Rhode Island Builders Association, Inc.,* 279 F.3d 94, 104 (1st Cir.2002) (applying Rhode Island law)). This Court will not entertain an estoppel claim when a governmental employee's actions clearly are *ultra vires.* See *Romano v. Retirement Board of the Employees' Retirement System of Rhode Island,* 767 A.2d 35, 39–40 (R.I.2001) (noting that estoppel does not apply when governmental officers act in conflict with state law); *Technology Investors v. Town of Westerly,* 689 A.2d 1060, 1062 (R.I.1997) (refusing to apply estoppel when municipality enacted an ordinance in clear contravention of state law).

In the case at bar, it is our opinion that because Reilly's comments were both erroneous and *ultra vires,* plaintiff cannot prevail on his claim of equitable estoppel. The situation here is very similar to that of *Romano.* In that case, the plaintiff retired from the Department of Transportation based on an incentive package offered by the state. *Romano,* 767 A.2d at 36. However, before retiring, plaintiff asked a retirement counselor if there would be any restrictions concerning his retirement benefits if, upon retirement, he began working for the Town of Bristol. *Id.* The counselor told plaintiff that she did not know of any restrictions, but that, if he wanted to make sure, he should ask the retirement board. *Id.* Additionally, Bristol's town administrator spoke to the then-executive director of the retirement system about plaintiff's situation; the executive director told the town administrator that there were no re-

---

**9.** The plaintiff argues that had he claimed accidental disability, he would have been awarded 25 percent more than he received by claiming ordinary disability.

strictions. *Id.* Almost simultaneously, plaintiff retired from the DOT and started his new job; eventually, the retirement board realized that plaintiff was collecting a pension while employed by a municipality that was a member of the retirement system, a situation sometimes referred to as "double-dipping." *Id.* at 37. The defendants notified plaintiff that his pension benefits were going to be canceled. *Id.*

We held then, as we do now, that plaintiff's estoppel claim must fail. The statements made by the retirement system employees were not within their authority to make because they contradicted state law. *Romano,* 767 A.2d at 38 (noting that the applicable statute required that " '[p]ension payments *shall* be suspended' (emphasis added) whenever any state retiree is reemployed by a municipality") (quoting § 36–10–36).

In our opinion, Reilly lacked either actual or implied authority to waive, modify, or ignore applicable state law that conflicted with his statements to plaintiff's counsel. The record discloses that, as the assistant executive director of the Employees Retirement System of Rhode Island, Reilly's duties at the time included overseeing the retirement system's operation and taking orders from the executive director; he was neither a member of the retirement board, nor was he an advisor. Although he admitted that he told plaintiff's attorney § 28–33–25.1 did not fall within the scope of § 36–10–31, this error does not alter the fact that he had no authority to make binding representations about statutory construction.

■■■■ Additionally, an estoppel claim requires two elements:

"first, an affirmative representation * * * on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Providence Teachers Union v. Providence School Board,* 689 A.2d 388, 391–92 (R.I.1997).

*See also El Marocco Club, Inc. v. Richardson,* 746 A.2d 1228, 1233 (R.I.2000). Furthermore, "[t]he key element of an estoppel is intentionally induced prejudicial reliance." *El Marocco Club,* 746 A.2d at 1234 (quoting *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 568, 376 A.2d 682, 686 (1977)).

There is nothing in the record to suggest that Reilly made his statement with the purpose of inducing plaintiff to act in reliance on the representation. The plaintiff's counsel asked Reilly a question and Reilly answered it, albeit erroneously. This does not constitute conduct on Reilly's part indicating that he deliberately induced plaintiff into believing that the settlement would not be offset against the disability payments when state law clearly specifies otherwise.

### Resurrection

■■■■ Finally, the plaintiff argues that this Court should allow him to resurrect his workers' compensation claim and accidental disability pension claim because he forfeited them because of Reilly's statements. The plaintiff admits that the Superior Court never addressed this issue. After careful review of the record in this case, the only reference to this claim is found in the last sentence of the plaintiff's memorandum supporting summary judgment. The plaintiff did not request this relief in his complaint, nor did he present this argument to the hearing justice. Further, the plaintiff failed to cite any applicable caselaw or statutory support for this claim. According to our oft-repeated "raise or waive" rule, we will not address

an issue that was not presented to the trial court. *State v. Swindell,* 895 A.2d 100, 105 (R.I.2006). Additionally, this Court will not consider issues that were not preserved by sufficiently focusing the trial justice's attention on the matter. *See State v. Wiggins,* 919 A.2d 987, 990 (R.I. 2007); *see also State v. Ibrahim,* 862 A.2d 787, 797 (R.I.2004) (recognizing that merely mentioning an issue during trial is not sufficient to preserve the issue under the "raise or waive" doctrine); *State v. Morris,* 744 A.2d 850, 859 (R.I.2000).

## Conclusion

For the reasons stated in this opinion, we affirm the grant of summary judgment in favor of the defendants. The record may be remanded to the Superior Court.