March 8, 2022

**Supreme Court**

No. 2019-101-M.P.
No. 2019-306-Appeal.
(PC 09-7242)

|  |  |
|---|---|
| Sandra Tiernan | : |
| v. | : |
| Seth Magaziner, in his capacity as<br>General Treasurer of the<br>State of Rhode Island, et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2019-101-M.P.
No. 2019-306-Appeal.
(PC 09-7242)
(Dissent begins on
page 19)

Sandra Tiernan                    :

v.                    :

Seth Magaziner, in his capacity as    :
General Treasurer of the
State of Rhode Island, et al.


Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  The plaintiff, Sandra Tiernan (Ms. Tiernan or plaintiff), appeals from and seeks review on certiorari of a judgment of the Superior Court in favor of the defendants, Seth Magaziner and Frank J. Karpinski, in their capacities as General Treasurer of the State of Rhode Island and Executive Director of the Employees' Retirement System of the State of Rhode Island, respectively (collectively defendants or ERSRI).[1]  Ms. Tiernan challenges the Superior Court's

---

[1] By operation of Rule 25(d) of the Superior Court Rules of Civil Procedure, the successors to the offices of state treasurer and executive director of the Employees' Retirement System of the State of Rhode Island have been automatically substituted for the prior officeholders.

- 1 -

determination that G.L. 1956 § 36-10-31 required ERSRI to offset against Ms. Tiernan's accidental disability pension amounts she received pursuant to a Workers' Compensation Court award of coordinated benefits under G.L. 1956 § 28-33-45. For the reasons stated herein, the judgment of the Superior Court is affirmed.

## Facts and Procedural History

The facts that gave rise to this case are not in dispute. On April 25, 2002, Ms. Tiernan sustained severe injuries while in the course of her employment, injuries that left her disabled. Prior to this undoubtedly life-altering event, Ms. Tiernan was employed by the State of Rhode Island; as such, she was a member of the Employees' Retirement System of the State of Rhode Island (the state retirement system).

Following the date of injury, a judge of the Workers' Compensation Court (WCC) found Ms. Tiernan to have a continuing "partial incapacity" and granted her petition for workers' compensation benefits. Ms. Tiernan received payment of those benefits from 2002 to 2009.

In March 2005, ERSRI notified Ms. Tiernan that the full Retirement Board of the Employees' Retirement System of the State of Rhode Island (the retirement board) had approved her application for an accidental disability pension. ERSRI determined her disability pension to be $688.13 per month. The Rhode Island Division of State Employees Workers' Compensation (the division) thereafter

notified ERSRI that Ms. Tiernan continued to receive workers' compensation benefits in the amount of $266.04 per week, or approximately $1,064 per month. Because Ms. Tiernan's continued workers' compensation benefits exceeded her disability pension benefit, ERSRI did not pay her a disability benefit.

However, when the division notified Ms. Tiernan of its intention to terminate her workers' compensation benefits effective May 28, 2008, she sought a continuation of benefits and applied for a coordination of benefits pursuant to the relevant provisions of the workers' compensation act. In February 2009, the division agreed to suspend Ms. Tiernan's workers' compensation benefits effective March 1, 2009, and the WCC resolved her request for coordination of benefits. Specifically, a judge of the WCC entered a pretrial order awarding Ms. Tiernan a coordinated benefit pursuant to § 28-33-45(a), which provides that a person receiving workers' compensation at retirement "shall[, subject to certain exceptions,] receive compensation and retirement benefits in a sum equal to the greater of the compensation or retirement benefits for which that person was otherwise eligible[.]"

For reasons not at issue in this appeal, Ms. Tiernan and the state, in its capacity as her employer, subsequently amended the WCC award by mutual agreement.[2] The

---

[2] According to the parties' stipulations, the pretrial order erroneously overstated Ms. Tiernan's disability retirement pension to be $1,064.64 per month, despite ERSRI previously notifying Ms. Tiernan that her monthly benefit would be an estimated $819 per month. Because of this overstatement, Ms. Tiernan and the state as her

plaintiff's final coordinated benefit award was $76.80 per week, or approximately $332.80 per month (the coordinated benefit). The mutual agreement awarded payment of this coordinated benefit retroactive to March 1, 2009, the originally scheduled effective date of Ms. Tiernan's disability retirement and termination of her workers' compensation payments.

A few months later, counsel for Ms. Tiernan sent a letter to ERSRI contesting deductions from her pension based upon her workers' compensation benefits and asserting that she was entitled to both her full disability retirement pension and the coordinated benefit. In December 2009, counsel for Ms. Tiernan filed the present declaratory judgment action in the Superior Court against ERSRI and the state. In both the letter and the complaint, Ms. Tiernan asserted that she was entitled to the coordinated benefit awarded pursuant to § 28-33-45(a) without a corresponding reduction of her accidental disability retirement pension by ERSRI pursuant to § 36-10-31, which mandates that ERSRI offset against disability benefits "[a]ny amount paid or payable under the provisions of any workers' compensation law[.]"

ERSRI disagreed with Ms. Tiernan's assertion; on January 19, 2010, ERSRI sent a letter to counsel for Ms. Tiernan explaining that § 36-10-31 required ERSRI "to offset any amount paid or payable under the provisions of any workers'

employer executed an agreement which amended her coordinated benefit to a weekly amount of $76.80.

- 4 -

compensation law." Accordingly, ERSRI concluded that, "effective immediately, ERSRI will begin to offset Ms. Tiernan's pension benefit retroactive to March 1, 2009 by the workers['] compensation weekly benefit of $76.80, as confirmed by the mutual agreement." The parties subsequently agreed to have the declaratory judgment action held in abeyance until Ms. Tiernan exhausted her administrative remedies on the matter.

On January 29, 2010, ERSRI responded to Ms. Tiernan's request for reconsideration by issuing an administrative denial. ERSRI repeated its view of the requirements of § 36-10-31, and further stated:

> "In January 2010, the Division of Workers' Compensation indicated that Ms. Tiernan has been collecting a weekly benefit from them in the amount of $76.80 ($332.80 monthly) since March 1, 2009. Again, by law this amount is to be offset against Ms. Tiernan's monthly pension benefit of $688.13 retroactive to March 1, 2009. Her pension benefit would be reduced to $355.80 per month."

In April 2010, the parties appeared before an ERSRI hearing officer. The parties stipulated to an agreed statement of facts and made brief arguments on the issue of law raised by Ms. Tiernan: Whether she was entitled to her coordinated benefit and disability pension without ERSRI offsetting the coordinated benefit against her disability pension. The parties submitted post-hearing memoranda on or before June 1, 2010; inexplicably, the hearing officer failed to render a decision on the matter for more than five years.

While a decision was still pending, but still more than five years later, ERSRI sent a letter to Ms. Tiernan and counsel dated May 28, 2015. The letter indicated that ERSRI had not until that point offset against Ms. Tiernan's disability pension the amounts paid for the coordinated benefit, but stated that ERSRI would "immediately reduce Ms. Tiernan's monthly pension benefit * * * retroactive to March 1, 2009[.]" The letter further indicated that Ms. Tiernan had been overpaid by more than $24,000 due to ERSRI's failure to implement the offset. Between recouping the amounts overpaid and implementing the offset going forward, ERSRI began reducing Ms. Tiernan's monthly disability pension to $49.01 until the overpayments were recovered.

In October 2015, the hearing officer finally issued a decision, affirming the January 29, 2010 administrative denial and upholding the offset. Ms. Tiernan contested the hearing officer's decision before the full retirement board, again arguing only the legal issue relating to whether she was entitled to her coordinated benefit and disability pension without the coordinated benefit being offset against her disability pension. The retirement board unanimously upheld the decision of the hearing officer. The decision "constitute[d] a final decision of ERSRI."

Litigation before the Superior Court resumed in February 2016. Ms. Tiernan amended her complaint twice, first adding a count entitled "Administrative Appeal Pursuant to RIGL § 42-35-7" (count two), and later adding a third count entitled

"Estoppel" (count three). In counts one and two, her declaratory judgment claim and administrative appeal, Ms. Tiernan directly challenged ERSRI's administrative decision to implement the offset. In count three, Ms. Tiernan claimed estoppel, to prevent recovery of the amount totaling more than $24,000 in overpayments made between 2010 and 2015, because, Ms. Tiernan alleged, ERSRI had complied with the pretrial order of the WCC and mutual agreement without asserting a challenge in the WCC.

ERSRI first moved for partial summary judgment as to counts one and three; by agreement of the parties, the trial justice first rendered a decision as to count two, the administrative appeal. In doing so, the court upheld ERSRI's final decision to offset Ms. Tiernan's workers' compensation payments against her disability pension. The court acknowledged that § 28-33-45 and § 36-10-31 "appear[ed] to be contradictory[,]" but ultimately rejected Ms. Tiernan's arguments, finding that the Legislature intended to include amounts paid pursuant to § 28-33-45 within the broad reach of § 36-10-31.

The trial justice subsequently rendered a decision granting ERSRI's motion for partial summary judgment as to the declaratory judgment and estoppel claims. In disposing of the declaratory judgment claim, the trial justice adopted her reasoning as set forth in her prior decision on count two, concluding that ERSRI's

application of § 36-10-31 to Ms. Tiernan's coordinated-benefit payment was not erroneous.

The trial justice also granted summary judgment in favor of ERSRI on Ms. Tiernan's estoppel claim. The trial justice reasoned that Ms. Tiernan had failed to demonstrate the elements of estoppel, because the record did not evince that ERSRI "made an affirmative representation" to Ms. Tiernan with the purpose or effect of inducing reliance, or that any representations had induced her to act to her detriment. The trial justice further reasoned that ERSRI's erroneous failure to implement the offset between 2009 and 2015 did not change the estoppel analysis because such an action was *ultra vires*—ERSRI had no authority to make the pension payments without the offset because such an action was contrary to state law under § 36-10-31.

An order and a judgment on decision were entered on February 18, 2019. On March 7, 2019, Ms. Tiernan filed (1) a petition for writ of certiorari seeking review of the trial justice's decision as to count two, which rejected plaintiff's administrative appeal and affirmed the decision of the retirement board; and (2) a notice of appeal seeking review of the trial justice's grant of summary judgment with respect to counts one and three. This Court granted the petition and issued the writ on April 14, 2020, and we consolidated the two matters for briefing and argument.

Ms. Tiernan does not challenge the Superior Court's analysis with respect to her estoppel claim. Instead, she assigns error to the decisions only insofar as the trial

justice determined that the offset provision in § 36-10-31 applied to payments made pursuant to § 28-33-45, the coordinated-benefits provision. Ms. Tiernan contends that this issue is dispositive of her entire appeal, and she maintains that § 28-33-45 entitles her to a coordinated benefit without a corresponding reduction to her accidental disability pension.

Accordingly, the sole issue presented is whether the trial court erred in upholding the decision of ERSRI to offset workers' compensation benefits paid pursuant to § 28-33-45 against disability retirement benefits payable to a member of the state retirement system.

**Standard of Review**

When reviewing a case on certiorari, and when reviewing an administrative appeal, our review is limited to questions of law. *E.g.*, *State v. Poulin*, 66 A.3d 419, 423 (R.I. 2013); *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1048 (R.I. 2008). Such review is conducted *de novo*. *E.g.*, *Iselin*, 943 A.2d at 1049. Similarly, a trial justice's decision to grant summary judgment is reviewed *de novo*. *E.g.*, *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009). And, though we give deference to a trial justice's decision to grant or deny declaratory judgment, we review *de novo* a trial justice's supporting rulings on questions of law. *E.g.*, *Grasso v. Raimondo*, 177 A.3d 482, 486 (R.I. 2018). Finally, "we review issues of statutory interpretation *de novo*[.]" *Waterman*, 983 A.2d at 844.

Thus, in sum, we are satisfied that the sole issue raised in plaintiff's administrative appeal and appeal from the grant of summary judgment is purely a question of law dealing with statutory construction. As such, we review the decisions of the trial justice *de novo*.

### Statutory Construction

This appeal requires us to resolve the question of whether § 36-10-31 requires ERSRI to offset workers' compensation benefits paid pursuant to § 28-33-45 against disability retirement benefits payable to a member of the state retirement system. "When construing statutes, this Court's role is 'to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.'" *Such v. State*, 950 A.2d 1150, 1155-56 (R.I. 2008) (quoting *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Waterman*, 983 A.2d at 844 (quoting *Iselin*, 943 A.2d at 1049).

However, "[i]t is an equally well-settled principle that 'statutes relating to the same subject matter should be considered together so that they will harmonize with each other and be consistent' with their general objective scope." *Such*, 950 A.2d at 1156 (quoting *State ex rel. Webb v. Cianci*, 591 A.2d 1193, 1203 (R.I. 1991)). When faced with the task of statutory construction, this Court "constru[es] and appl[ies]

apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency." *Id.* (quoting *Kells v. Town of Lincoln*, 874 A.2d 204, 212 (R.I. 2005)). "In such cases, 'courts should attempt to construe two statutes that are in apparent conflict so that, if at all reasonably possible, both statutes may stand and be operative.'" *Id.* (quoting *Shelter Harbor Fire District v. Vacca*, 835 A.2d 446, 449 (R.I. 2003)). In applying these principles, our aim is to "give effect 'to the apparent object and purpose of the Legislature.'" *Id.* (quoting *Merciol v. New England Telephone and Telegraph Company*, 110 R.I. 149, 153, 290 A.2d 907, 910 (1972)).

However, where we confront "competing statutory provisions that cannot be harmonized, we adhere to the principle that 'the specific governs the general * * *.'" *Felkner v. Chariho Regional School Committee*, 968 A.2d 865, 870 (R.I. 2009) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). General Laws 1956 § 43-3-26 mandates this analytical approach:

> "Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."

Thus, "'repeals by implication are not favored by the law,' and '[o]nly when the two statutory provisions are *irreconcilably repugnant* will a repeal be implied and the last-enacted statute be preferred.'" *Such*, 950 A.2d at 1156 (quoting *McKenna v.*

- 11 -

*Williams*, 874 A.2d 217, 241 (R.I. 2005) (Suttell, J., concurring in part and dissenting in part)).

We are of the view that § 36-10-31 and § 28-33-45 are statutes relating to the same subject matter. *See Such*, 950 A.2d at 1156. That is, both § 36-10-31 and § 28-33-45 govern the treatment of workers' compensation benefits at the time an employee retires. These statutes must therefore "'be considered together so that they will harmonize with each other and be consistent' with their general objective scope." *Id.* (quoting *State ex rel. Webb*, 591 A.2d at 1203).

Title 36, chapters 8 through 10 of the general laws establish and govern "[a] retirement system * * * for the purpose of providing retirement allowances for employees of the state of Rhode Island" (the retirement provisions). Section 36-8-2. Administration of the system is vested in the retirement board. Section 36-8-3. Section 36-10-31 directs the retirement board and its agents, in part, as follows:

> "*Any amount paid or payable under the provisions of any workers' compensation law* exclusive of Medicare set-aside allocations, specific compensation benefits or any benefits authorized by the terms of a collective bargaining agreement or as the result of any action for damages for personal injuries against the state of Rhode Island on account of the death or disability of a member *shall be offset against and payable in lieu of any benefits payable out of funds provided by the state under the provisions of this chapter on account of the death or disability of the member*." (Emphasis added.)

This is an unambiguous mandate, and its applicability to the facts of this case is clear.

Ms. Tiernan retired on an accidental disability pension provided under § 36-10-14 of the retirement provisions. ERSRI therefore calculates Ms. Tiernan's pension under § 36-10-15(a), which provides that a retiree's pension will be 66 2/3 percent of the retiree's annual compensation at the time of retirement, "subject to the provisions of § 36-10-31." The unambiguous language of § 36-10-31 in turn requires that "*any*" amounts paid as workers' compensation be offset against the amounts paid as accidental disability pension. (Emphasis added.) Here, it is undisputed that the coordination-of-benefits provision at issue, § 28-33-45, is contained in the workers' compensation laws, which are set forth in title 28, chapters 29 through 38 of the general laws. *See* G.L. 1956 § 28-29-1. The workers' compensation benefits paid in this case therefore fall squarely within the ambit of § 36-10-31.

Ms. Tiernan argues, however, that the terms of § 28-33-45 itself contradict the terms of § 36-10-31, such that § 28-33-45 prevails and is not included in the offset requirement of § 36-10-31. Section 28-33-45(a) reads as follows:

> "The department of labor and training shall immediately promulgate rules and regulations concerning the offset of workers' compensation benefits and retirement benefits. *It is the intention of the general assembly that at retirement a person receiving benefits under chapters 29--38 of this title shall receive compensation and retirement benefits in*

- 13 -

*a sum equal to the greater of the compensation or retirement benefits for which that person was otherwise eligible*, however, not including retirement benefits to the extent derived exclusively from employee contributions." (Emphasis added.)

Ms. Tiernan emphasizes that enforcement of § 36-10-31 at the expense of § 28-33-45 means that one could never accomplish the intent of § 28-33-45—that is, a claimant will never receive "the greater of" either the workers' compensation benefits or retirement benefits for which they are otherwise eligible because § 36-10-31 will always result in a dollar-for-dollar setback. We recognize the conflict between the two statutes. However, we conclude that the statutes are not "irreconcilably repugnant[.]" *Such*, 950 A.2d at 1156 (emphasis omitted) (quoting *McKenna*, 874 A.2d at 241). Instead, they can be construed so that both "may stand and be operative." *Id.* (quoting *Vacca*, 835 A.2d at 449).

Section 28-33-45 is a provision of the workers' compensation act that, subject to certain exceptions, applies to "any person who has entered into the employment of or works under contract of service or apprenticeship *with any employer*[.]" Section 28-29-2(4) (emphasis added) (defining "employee" for purposes of the workers' compensation act). Section 36-10-31 applies to a more narrow group of employees—employees of the State of Rhode Island who retire pursuant to the state retirement system. *See* § 36-9-2 (governing state retirement system membership) and § 36-8-1(9) (defining "employee" for purposes of chapters 8 through 10 of title 36

- 14 -

of the general laws). Only state employees are subject to the offset set out in § 36-10-31. Non-state employees who retire while receiving workers' compensation benefits may take advantage of the coordination of benefits provided by § 28-33-45 and receive "the greater of" the workers' compensation and retirement benefits for which they are otherwise eligible. Section 28-33-45. Read this way, "both statutes may stand and be operative." *Such*, 950 A.2d at 1156 (quoting *Vacca*, 835 A.2d at 449).

Further, this construction is consistent with the legislative intent behind § 36-10-31 as expressed in *Waterman*, where we interpreted § 36-10-31 and determined that it was both broad and unambiguous. *Waterman*, 983 A.2d at 845. We concluded that the Legislature's use of broad language was to "ensure that money received under any workers' compensation claim is offset against disability retirement payments to prevent *a state employee* from recovering twice." *Id.* (emphasis added).

Ms. Tiernan argues that our holding in *Waterman* should not control the disposition of this case because this case involves § 28-33-45, which itself coordinates both retirement benefits and workers' compensation benefits. We are unpersuaded. Our analysis of the legislative intent provided in *Waterman* was sound and controls. *See Waterman*, 983 A.2d at 845-46. Section 36-10-31 prevents a *state* employee from recovering twice *from the state* for the same injury. *Id.* at 845. At

the same time, the intent of the Legislature as expressed in § 28-33-45 stands with respect to non-ERSRI retirees, who will not face a financial penalty at retirement because they may collect an amount equal to the greater of the compensation and retirement benefits for which they are otherwise eligible.

Ms. Tiernan also contends that § 28-33-45 is the statute enacted later in time, and therefore should control. *See* P.L. 1992, ch. 31, § 9 (enacting the workers' compensation act); P.L. 1936, ch. 2334, § 11 (creating the state retirement system). Such an argument requires this Court to accept that, when enacted in 1992, § 28-33-45 impliedly repealed § 36-10-31 to the extent it was applicable to § 28-33-45. However, this Court's rules of statutory construction and the mandate contained in § 43-3-26 require us first to attempt to give meaning to both provisions and to prioritize the specific statute over the general statute; and only after applying those rules can this Court consider a repeal by implication and conclude that the later enactment controls. *See Such*, 950 A.2d at 1156; § 43-3-26. Because we can construe the two statutes so that we can give effect to both, the statutes are not irreconcilably repugnant, and this Court need not find a repeal by implication. *See Such*, 950 A.2d at 1156.

Moreover, at the time of our decision in *Waterman*, § 36-10-31 did not include the clause excluding from its reach "Medicare set-aside allocations, specific compensation benefits or any benefits authorized by the terms of a collective

bargaining agreement." *See* P.L. 2014, ch. 231, § 5; P.L. 2014, ch. 289, § 5 (effective July 1, 2014). The new exclusions reinforce the otherwise all-encompassing language of § 36-10-31 and confirm that "*any*" other benefits provided under the workers' compensation laws are subject to being offset. *See Waterman*, 983 A.2d at 845; § 36-10-31. *Compare* P.L. 1936, ch. 2334, § 11, *and* P.L. 1947, ch. 1971, § 1, *with* P.L. 2014, ch. 231, § 5, *and* P.L. 2014, ch. 289, § 5. As we said in *Waterman*, if the Legislature meant to limit the offsets as advanced by plaintiff, it could have done so. *Waterman*, 983 A.2d at 845 ("If the Legislature wanted to so limit the offsets, it could have done so when it enacted the statute * * *.").

Further, we are cognizant that the statutory provisions at issue in this case pertain to two separate administrative schemes and corresponding agencies— workers' compensation and the state retirement system. "An administrative agency is a product of the legislation that creates it, and it follows that '[a]gency action is only valid, therefore, when the agency acts within the parameters of the statutes that define [its] powers.'" *Iselin*, 943 A.2d at 1050 (quoting *In re Advisory Opinion to the Governor*, 627 A.2d 1246, 1248 (R.I. 1993)). Section 36-10-31 is one such statute that creates a clear parameter: The retirement board "shall" offset amounts received under the workers' compensation laws. Such language is "mandatory, not discretionary." *Connelly v. City of Providence Retirement Board*, 601 A.2d 498, 500

- 17 -

(R.I. 1992). We will not subordinate the enabling statutes of the retirement board to the provisions of another statutory scheme by means of a repeal by implication.

The mandate of § 36-10-31, which requires ERSRI to offset "[a]ny amount paid" under the workers' compensation laws against a member's disability retirement pension, applies to workers' compensation awarded pursuant to § 28-33-45. We therefore hold that the trial court did not err in upholding the decision of ERSRI to offset workers' compensation benefits paid to Ms. Tiernan against disability retirement benefits payable to her as a member of the state retirement system.[3]

---

[3] We are dismayed that ERSRI subjected Ms. Tiernan to an unconscionable five-year delay in rendering a final administrative decision and thereby hindered her ability to exhaust her administrative remedies in a timely fashion. We are equally mystified and disappointed that ERSRI inexplicably failed to implement the offset during that period despite providing repeated notifications to the contrary. All of this has resulted in a continuing collection of retroactive overpayments in excess of $24,000 against Ms. Tiernan's disability retirement pension. Nevertheless, Ms. Tiernan challenged these actions in count three of her second amended complaint; she argued that ERSRI should be estopped from collecting retroactive overpayments after failing to do so for five years. Notwithstanding the fact that the trial justice rendered a decision and separate analysis on this matter, Ms. Tiernan has assigned no error particular to this aspect of the trial justice's decision. We are therefore constrained to limit our decision to the sole issue raised by Ms. Tiernan on review. *See McGarry v. Pielech*, 108 A.3d 998, 1004-05 (R.I. 2015) ("[W]e expect if not 'demand that the briefs before us will contain all the arguments that the parties wish us to consider[.]'* * * Even when a party has properly preserved its alleged error of law in the lower court, a failure to raise and develop it in its briefs constitutes a waiver of that issue on appeal[.]") (quoting *Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648, 654 (R.I. 1989)).

**Conclusion**

For the foregoing reasons, we affirm the judgment of the Superior Court and remand the record to the Superior Court.

**Justice Goldberg, dissenting.** In 1992, when the General Assembly undertook a comprehensive workers' compensation overhaul, the preamble to chapter 29 of title 28 of the general laws declared that the workers' compensation system was in a state of crisis and that reform was necessary to incentivize insurers to better manage employees in the system and assist in improving and bringing stability to the fiscal health of the system. *See* G.L. 1956 § 28-29-1.2(a) (enacted by P.L. 1992, ch. 31, § 1). The coordination-of-benefits section before this Court was part of that overhaul. *See* G.L. 1956 § 28-33-45 (enacted by P.L. 1992, ch. 31, § 9). In enacting this provision, the General Assembly unequivocally declared that it was "the intention of the general assembly that at retirement a person receiving benefits under chapters 29 − 38 of this title shall receive compensation and retirement benefits in a sum equal to the greater of the compensation or retirement benefits for which that person was otherwise eligible[.]" Section 28-33-45(a). In order for there to be a "sum[,]" funds must come from more than one source.

Based on this declaration, I am hard-pressed to find an exception to this language in order to draw an inference that the General Assembly intended to

- 19 -

exclude state and municipal employees from the provisions of § 28-33-45, when this section specifically states that it applies to "person[s] receiving benefits *under chapters 29 − 38 of [title 28]*" (emphasis added), which includes chapter 31 of title 28, entitled "Workers' Compensation—State and Municipal Employees[.]"  The primary purpose of § 28-33-45 is to ensure that at retirement these employees "receive compensation and retirement benefits in a sum equal to the greater of the compensation or retirement benefits for which [they are] otherwise eligible[.]" Section 28-33-45(a).  Therefore, I respectfully dissent.[1]

Additionally, I am of the opinion that the majority's efforts to harmonize § 28-33-45 and G.L. 1956 § 36-10-31 resulted in a double offset to the sum to which Tiernan may have been entitled.  In my opinion, § 28-33-45 and § 36-10-31 can be seamlessly harmonized without regard to the fact that § 36-10-31 has been amended to protect employees who are parties to a collective bargaining agreement. *See* § 36-10-31, as amended by P.L. 2014, ch. 231, § 5; P.L. 2014, ch. 289, § 5.  This amendment is of no moment to this controversy because, by excluding union employees from the provisions of § 36-10-31, these employees may now receive *all* of their workers' compensation benefits upon retirement, plus their entire retirement

---

[1] Further, it is worth noting that G.L. 1956 § 28-29-1.3, which sets out the jurisdiction of the Workers' Compensation Act, provides that "[t]he provisions of chapters 29 − 38 of this title shall apply to *any* and *all* employees, as defined in § 28-29-2(4)[.]" (Emphasis added.)

- 20 -

pension amount. *See* § 36-10-31. Thus, save for disadvantaging nonunion public employees who participate in ERSRI, the amendment to § 36-10-31 is irrelevant to this analysis.[2]

Based on its language, § 28-33-45 clearly applies to both public and private employees, while § 36-10-31 applies only to nonunion state and municipal officers and employees who participate in ERSRI.[3] *See* §§ 28-33-45 and 36-10-31; *see also* P.L. 1936, ch. 2334, § 1(2) (defining "employee" for purposes of the state retirement system). Most notably, the coordination-of-benefits statute merely sets the sum that an employee is to receive, specifically mandating that "*at retirement* a person receiving [workers' compensation] benefits * * * shall receive compensation and retirement benefits in a sum equal to the greater of the compensation or retirement benefits for which that person was otherwise eligible[.]" Section 28-33-45 (emphasis added). In order to encourage injured state and municipal employees to enter the retirement system for the salutary purpose of reducing the number of employees

___

[2] Further, in enacting G.L. 1956 § 28-33-45, the General Assembly expressly directed the department of labor and training to promulgate rules and regulations concerning the offset of workers' compensation benefits and retirement benefits, at a time when G.L. 1956 § 36-10-31 already was in existence. *See* § 28-33-45 (as enacted by P.L. 1992, ch. 31, § 9, effective May 18, 1992); § 36-10-31 (as enacted by P.L. 1936, ch. 2334, § 11, effective April 30, 1936).

[3] Section 28-29-2(4) specifically includes in the definition of "employee" for purposes of the workers' compensation act "[a]ny person employed by the state of Rhode Island," with the exception of Rhode Island State Police and members of "organized fire and police departments of any town or city."

receiving workers' compensation benefits, reducing the work force, or securing workers for positions that become available due to these retirements, the General Assembly declared its intent that, when a disabled employee leaves state employment, he or she is entitled to compensation and benefits equal to the greater amount that he or she was eligible to receive. *See* §§ 28-29-1.2 and 28-33-45.

On the other hand, the retirement benefits provision, § 36-10-31, sets the calculation or allocation of how to arrive at that sum for those employees to whom it applies. Specifically, § 36-10-31 provides, in part:

> "Any amount paid or payable under the provisions of any workers' compensation law * * * shall be offset against and *payable in lieu of any benefits payable out of funds provided by the state under the provisions of this chapter* on account of the death or disability of the member." (Emphasis added.)

The majority opinion overlooks the clear language in this section providing that Tiernan was to receive workers' compensation "in lieu of" her disability pension benefits. *Id.* For instance, in 2005, when she became eligible for disability retirement, Tiernan's weekly workers' compensation benefit of $266.04 "exceeded the amount of her pension benefit with ERSRI, [and] the entirety of her disability pension benefit was offset from her workers' compensation benefits" by ERSRI. During that period of time, when she remained on workers' compensation, was clearly disabled, and could not work, Tiernan was unable to collect any retirement benefits; and, both § 28-33-45 and § 36-10-31 operated with their intended effect—

- 22 -

that is, (1) Tiernan received a sum in an amount of the greater of the two, in accordance with § 28-33-45, which was $266.04; and (2) Tiernan received workers' compensation *in lieu of* her pension benefits, in accordance with § 36-10-31.

In 2009, while still disabled and unable to work, she applied for a continuation of her workers' compensation benefits, but also elected to begin receiving her disability pension and executed a suspension agreement with the Division of Workers' Compensation "based upon her entitlement to a Rhode Island state disability pension." In accordance with the statute, the Workers' Compensation Court then (1) attempted to coordinate her benefits with her disability pension benefits; and (2) awarded Tiernan $76.80 per week in workers' compensation in addition to the $189.24 she was receiving in disability pension benefits in order to arrive at her total weekly entitlement amount of $266.04—in order to set a "sum equal to the greater of the [workers'] compensation or retirement benefits for which [Tiernan] was otherwise *eligible*[.]"[4] Section 28-33-45(a) (emphasis added). This reduction of her workers' compensation benefits was the first offset to Tiernan's benefits. Plainly, Tiernan was partially disabled and remained eligible for continued workers' compensation; yet, the issue as to precisely what amount of continued

---

[4] The $189.24 per week in disability pension benefits is an approximate number that was calculated based on Tiernan's entitlement to $819 per month (approximately $819 monthly divided by 4.33 weeks amounts to $189.24 per week), as specified in the parties' stipulation. The Workers' Compensation Court amount of $76.80 is the difference between $266.04 and $189.24.

workers' compensation was "payable" to Tiernan within the meaning of § 36-10-31 was not considered by ERSRI.

Nevertheless, when faced with a permanently and partially incapacitated state employee, who was injured in the scope of her employment, ERSRI—having the benefit of the information in the Workers' Compensation Court pretrial order that Tiernan was entitled to workers' compensation in an amount equal to $266.04 each week yet her compensation was reduced to $76.80—then proceeded to offset her disability pension benefit by $76.80, the amount she was to receive in workers' compensation. This was the second offset to her benefits and, in effect, resulted in Tiernan receiving no workers' compensation benefits and certainly not a sum equal to the greater of the two benefits.

In my opinion, had Tiernan understood that her workers' compensation would be offset by her disability pension benefits and that, subsequently, her disability pension benefits would also be offset by her workers' compensation, she might not have entered into a suspension agreement—"based upon her entitlement to a Rhode Island state disability pension"—resulting in her receipt of less than $266.04 per week. This result runs contrary to the purpose of incentivizing disabled employees to transition from workers' compensation to disability pension benefits. More importantly, I doubt that the Legislature intended a double offset.

For these reasons, I dissent.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Sandra Tiernan v. Seth Magaziner, in his capacity as General Treasurer of the State of Rhode Island, et al. |
| **Case Number** | No. 2019-101-M.P.<br>No. 2019-306-Appeal.<br>(PC 09-7242) |
| **Date Opinion Filed** | March 8, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Gregory L. Boyer, Esq. |
| | For Defendants:<br><br>Michael P. Robinson, Esq. |